STATE of Wisconsin, Plaintiff-Respondent,

v.

Murry W. LOCKE, Defendant-Appellant.

Court of Appeals

*No. 92–2836–CR. Submitted on briefs May 10, 1993.—Decided June 8, 1993.*

(Also reported in 502 N.W.2d 891.)

593

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mia Sefarbi* of *Levine, Epstein & Kohler* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Murry Locke appeals a judgment of conviction and an order denying him postconviction relief. A jury found Locke guilty of three counts of first-degree sexual assault of a person under the age of thirteen, in violation of sec. 948.02(1), Stats., and two counts of first-degree sexual assault of a person twelve years of age or younger, in violation of sec. 940.225(1)(d), Stats.[1] Locke appeals on the following grounds: (1) The final two counts should have been severed from the first three pursuant to sec. 971.12(3), Stats.; (2) the testimony of a social worker who interviewed Locke should have been barred when Locke invoked his physician-patient privilege; (3) he was given inadequate time to prepare his defense of not guilty by reason of mental disease or defect; and (4) his sentence should be modified because a new factor,

---

[1] Section 940.225(1)(d) is the predecessor statute to sec. 948.02(1).

inability to obtain prompt treatment, frustrates the sentence's purpose.

We conclude that the circuit court properly exercised its discretion by denying Locke's motion for severance. However, we conclude that the social worker testified regarding a privileged communication. Because the erroneous admission of this evidence is not harmless error, we reverse and remand this case for retrial. Because the case will be retried, we need not reach the continuance or sentencing issues.

Locke was charged with five sexual assaults occurring in two separate episodes. Counts one, two and three arose on May 26, 1991, when Locke joined his friend, Randy B., to talk and watch a Memorial Day fireworks display. Also present were Randy's fiancee, Patty T., and her six-year-old daughter, A.T., along with their friend, Jeri A., and her two daughters, four-year-old B.A. and five-year-old J.A. During this time, the three girls took turns sitting on Locke's lap. Jeri A. believed that she saw Locke touch B.A.'s vaginal area. At one point, A.T. jumped off Locke and said that he touched her private parts. As a result of this episode, Locke was charged with sexually assaulting all three girls. His defense at trial was that he did not touch their private parts to the best of his knowledge and that, if he did so, such touching was unintentional.

Counts four and five arose in May of 1989. Both counts involved an eight-year-old girl, M.T., who had been Locke's neighbor. On May 20, 1989, M.T. told her mother that Locke had touched M.T.'s breasts or rubbed her top. M.T.'s mother informed M.T.'s father, John. John T. testified that he thought at the time the touching must have been accidental and, because Locke was moving shortly, he did not report the incident. On June 18, 1991, while investigating the 1991

episode, the police contacted the T. family. The officer took M.T.'s statement that Locke had touched her in May of 1989, and M.T. disclosed for the first time an allegation that Locke had touched her vaginal area a week or so prior to touching her breasts. At trial, Locke testified that M.T.'s allegations were false in their entirety.

## SEVERANCE

Locke sought to sever the counts from the 1991 episode from those of the 1989 episode. He maintained that he had incompatible defenses to the two groups of charges. He appeals the denial of his motion to sever.

On appeal, review of joinder is a two-step process. First, the court reviews the initial joinder determination. Whether the initial joinder was proper is a question of law that we review without deference to the trial court, and the joinder statute is to be construed broadly in favor of the initial joinder. *State v. Hoffman*, 106 Wis. 2d 185, 208, 316 N.W.2d 143, 156 (Ct. App. 1982). Joinder may be had when two or more crimes "are of the same or similar character or are based on the same act or transaction . . . ." Section 971.12(1), Stats. To be of the "same or similar character," crimes must be the same type of offense occurring over a relatively short period of time and the evidence as to each must overlap. *State v. Hamm*, 146 Wis. 2d 130, 138, 430 N.W.2d 584, 588 (Ct. App. 1988). In *Hamm*, we held that acts two years apart can be considered as "occurring over a relatively short period of time." Here, in both episodes, the charges are identical and Locke's intent must be shown in both. Thus, the evidence as to each overlaps. We conclude that the circuit court's initial joinder of all five counts was proper.

Locke, however, moved the court under sec. 971.12(3), Stats., to sever the two episodes. Section 971.12(3) provides that even after initial joinder, the court may order separate trials of the charges if it appears that a defendant is prejudiced by a joinder of the counts. A motion for severance is addressed to the trial court's discretion. *Hoffman*, 106 Wis. 2d at 209, 316 N.W.2d at 157.

When a motion for severance is made, the trial court must determine what, if any, prejudice would result from a trial on the joined offenses. The court must then weigh this potential prejudice against the interests of the public in conducting a trial on the multiple counts. *Id.*

An erroneous exercise of discretion, in the balancing of these competing interests, will not be found unless the defendant can establish that failure to sever the counts caused "substantial prejudice." *Id.* In evaluating the potential for prejudice, courts have recognized that, when evidence of the counts sought to be severed would be admissible in separate trials, the risk of prejudice arising because of joinder is generally not significant. *State v. Bettinger*, 100 Wis. 2d 691, 695, 303 N.W.2d 585, 587 (1981). The test for failure to sever thus turns to an analysis of other crimes evidence under *Whitty v. State*, 34 Wis. 2d 278, 149 N.W.2d 557 (1967).

In determining whether other bad acts evidence is admissible, the court undertakes another two-step process. First, the court must find that the evidence fits within one of the exceptions in sec. 904.04(2), Stats.

Second, the trial court must exercise its discretion to determine whether any prejudice resulting from such evidence outweighs its probative value. Section 904.03, Stats.

Section 904.04(2), Stats., provides that evidence of other acts of misconduct may be offered for the limited purposes of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In all five of the counts against Locke, his intent is an element of the crime. Evidence is always admissible to prove an element of the charged crime even if the defendant does not dispute it at trial. *State v. Plymesser*, 172 Wis. 2d 583, 594-95, 493 N.W.2d 367, 372 (1992). Thus, the evidence from each of the potential severed claims would fit within one of the exceptions in sec. 904.04(2).

Next, the court must weigh the probative value of this evidence against its prejudicial effect. *State v. Friedrich*, 135 Wis. 2d 1, 19, 398 N.W.2d 763, 771 (1987). Locke contends that although the court mentioned this weighing test during its oral decision, it never actually undertook the weighing. We disagree. In denying Locke's severance motion, the court implicitly ruled that evidence of each episode would be admissible in the other's trial because the probative value of the other act evidence outweighed its prejudicial effect. *See State v. Pharr*, 115 Wis. 2d 334, 347, 340 N.W.2d 498, 503-04 (1983) (we search the record for reasons to sustain evidentiary rulings of the trial court).

Our review of the trial court's decision requires that we assess the other acts referred to in the proffered testimony for their nearness in time, place and circumstance to the alleged crime or element sought to

be proved. *Friedrich*, 135 Wis. 2d at 23, 398 N.W.2d at 773. Here, evidence of each episode was highly probative of Locke's intent, as well as a scheme or plan in the other episode. Thus, in both cases, the probative value outweighed any prejudicial effect. *See id.* at 24, 398 N.W.2d at 773; *State v. Fishnick*, 127 Wis. 2d 247, 261-62, 378 N.W.2d 272, 279-80 (1985). The trial court correctly exercised its discretion in denying Locke's severance motion because the evidence of each episode met the *Whitty* evidence standard, and joinder of all five counts would not cause substantial prejudice.

## SECTION 905.04, STATS., PRIVILEGE

At trial, the state sought to introduce testimony from Lillian Wheelock, a psychiatric social worker who interviewed Locke in 1989 and 1990. Locke claimed that Wheelock's testimony should be suppressed because under sec. 905.04, Stats., the evidence was privileged. Because the background of Wheelock's professional relationship with Locke is crucial to the privilege determination, we present that background.

In November of 1989, Locke sought psychotherapy from the Brown County Mental Health Center, and saw Lillian Wheelock, a psychiatric social worker employed as a therapist. Procedure at BCMHC requires that social workers consult with the patient's supervising psychiatrist about a new case, talk about the case and have the psychiatrist sign a treatment plan. Locke was given forms that disclosed that he had an "attending psychiatrist." Information in forms given him told him that his treatment would be confidential and would be reviewed at least every ninety days by a physician.

Wheelock saw Locke alone in November of 1989, and June and July of 1990. However, Wheelock never

discussed Locke's case with a physician. At a pretrial hearing, Wheelock testified that she told Locke "[w]hen he initially came in and started talking about sexual material . . . that if he gave me information that looked like he had done something inappropriate to children or sexual assault, that, yes, I was required by law to report that." She stated Locke indicated that he understood this warning. Wheelock reiterated that "whenever someone comes in with very sensitive types of materials, such as [Locke], I always also indicate to them that if they divulge information that is of the nature to be reported, I would have to do so." At pretrial, Locke explained his understanding of his comments' confidentiality:

> Over and over, I was guaranteed confidentiality. The exception that I was told about was that in the case of a court order, Lillian Wheelock didn't think that she could shield the records. But that was the only exception.

When he learned that Wheelock had disclosed some of his statements, Locke became upset. Regarding Locke's reaction, Wheelock testified on cross-examination as follows:

> Q . . . if I understand your testimony correctly, for the last three sessions [Locke] berated you for breaching his confidentiality, did he not?
>
> A Yes.
>
> Q Okay. So it was obvious to you that he believed the discussions that he had with you were confidential; isn't that true? Yes or no, Ma'am?
>
> A Yes.

The trial court refused to suppress Wheelock's testimony, reasoning that because Wheelock was not a doctor and was not working under a doctor's supervision, the statutory privilege did not apply. Before the jury, Wheelock testified as follows:

Q What was the general area of his discussion as far as why he wished to have therapy from you?

A He indicated that he had an out-of-control sex drive that was going to ruin his family and his employment possibilities unless it was brought back under control or be — better able to be controlled.

Q Do you recall any of the specific problems that he mentioned or any of the specific statements he made to you when you were providing counseling to him?

A He indicated that he had an out-of-control sex drive. He also indicated that he had behaved inappropriately with a girl under the age of 15 in the state of Colorado in November of '89. He also indicated that he had installed a two-way mirror in his bathroom to where he would photograph his stepdaughters, as well as watch their activities in the bathroom. He also indicated he had a problem with pedophilia.

Q And can you just define pedophilia for the jury, please?

A Pedophilia, which I will take out of the diagnostic manual, is a recurrent intense sexual urge and sexually arousing fantasies involving the activity of using a child under the age of 13 or children under the age of 13.

601

The jury convicted Locke on December 6, 1991. Locke's motion for postconviction relief was denied. He appealed his conviction and the order denying him relief.

### 1. Privilege Applies to Social Workers

The trial court ruled that because Locke only spoke with a social worker and the social worker never discussed his case with a doctor, Locke was not a "patient" as contemplated by sec. 905.04(1)(c), Stats., and the social worker was not "under the direction of the physician," as contemplated by sec. 905.04(2). Thus, the court ruled Locke had no sec. 905.04 privilege. We construe sec. 905.04 independently of the trial court's ruling. *See State v. S.H.*, 159 Wis. 2d 730, 735, 465 N.W.2d 238, 240 (Ct. App. 1990).

Evidentiary privileges interfere with the trial court's search for the truth and must be strictly construed "consistent with the fundamental tenet that the law has the right to every person's evidence." *State v. Echols*, 152 Wis. 2d 725, 737, 449 N.W.2d 320, 324 (Ct. App. 1989). The Wisconsin legislature has determined that communications between patients and medical providers are privileged. Section 905.04, Stats. The purpose of the physician-patient privilege is especially apparent in cases of psychotherapy. The privilege's rationale has been described as follows:

> [A] patient must have complete confidence in a psychotherapist to ensure effective therapy. The psychotherapist-patient relationship has been compared to that of the lawyer-client or the priest-penitent. Because a threat to secrecy would block

successful treatment, the need for such a privilege is evident.

*Cunningham v. Southlake Center for Mental Health*, 125 F.R.D. 474, 477 (N.D. Ind. 1989) (citation omitted). Wisconsin's privilege, sec. 905.04, provides in part:

> **(1)** . . . In this section:
>
> . . . .
>
> (b) A communication or information is "confidential" if not intended to be disclosed to 3rd persons other than those present to further the interest of the patient . . . .
>
> **(2)** GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor or psychologist.

"Patient" means a "person who consults or is examined or interviewed by a physician, registered nurse, chiropractor or psychologist." Section 905.04(1)(c), Stats.

In *S.H.*, we specifically held that the sec. 905.04, Stats., privilege extends to patient contacts with social workers. There, we reasoned:

> [T]he privilege extends to people "who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor or psychologist." Section 905.04(2), Stats. [The social worker] testified that he met regularly

603

with [the psychologist] and discussed what therapy had been done as well as what should be done in the future. We conclude that the trial court correctly held that the privilege extended to the children's communication with [the social worker].

*S.H.*, 159 Wis. 2d at 736, 465 N.W.2d at 241.

The state admits that although Locke does not technically meet the definition of "patient" in sec. 905.04(1)(c), Stats., the language in subsec. (2) and in *S.H.* implies that he is a patient. However, the state argues that Wheelock did not actually consult with any physician regarding Locke and therefore was not "under the direction of" a physician, as contemplated by sec. 905.04(2) and *S.H.* We disagree. The patient's objectively reasonable perceptions and expectations of the medical provider are the proper gauge of the scope of the sec. 905.04 privilege. *State v. Jenkins*, 80 Wis. 2d 426, 434, 259 N.W.2d 109, 113 (1977). The patient's intent to disclose confidential information is crucial in determining whether a valid privilege exists. *In re K.S.*, 137 Wis. 2d 570, 575-76, 405 N.W.2d 78, 80-81 (1987); *see also Cabrera v. Cabrera*, 580 A.2d 1227, 1234 (Conn. 1990); *State v. Ortega*, 817 P.2d 1196, 1214 (N.M. 1991).

Here, Locke's objectively reasonable expectation was that the social worker was working with a psychologist. He was given forms that disclose that he had an "attending psychiatrist." He was further given forms that stated his treatment would be confidential and would be reviewed by a physician at least every ninety days. Thus, we conclude that Locke's communications with Wheelock were within the privilege granted by sec. 905.04, Stats.

## 2. Communications were Confidential

The state also argues that if Locke had a sec. 905.04, Stats., privilege, he waived it because Wheelock informed him that she had a duty to disclose certain items. This analysis is in fact not a waiver analysis, but rather a determination of whether the communications revealed by Wheelock were "confidential." Section 905.04(1)(b) states, "a communication . . . is 'confidential' if not intended to be disclosed to 3rd persons other than those present to further the interest of the patient." Once again, Locke's intent predicates the scope of his privilege. *K.S.*, 137 Wis. 2d at 575-76, 405 N.W.2d at 80-81.

Wheelock testified that it was obvious to her that Locke believed the discussions he had with her were confidential. However, to claim the privilege, Locke must show that this belief was objectively reasonable. *See State v. Jenkins*, 80 Wis. 2d 426, 434-35, 259 N.W.2d 109, 113 (1977). Stated conversely, the state may not introduce Wheelock's testimony unless Locke knew or reasonably should have known, as a result of the warnings given by Wheelock, that his statements would not be confidential.

The scope of Wheelock's warnings to Locke regarding what communications were not confidential is not well-established. The trial court did not reach this issue because it ruled the privilege did not apply to Locke. Consequently, the record does not fully discuss the effect of Wheelock's disclosure warnings to Locke. [2]

---

[2] This is further complicated by the fact that Wheelock was in error in her belief that she was required to "report" admissions of child sexual abuse admitted by Locke. In fact, social workers are only required to report suspected child abuse

However, even giving Wheelock's warnings their broadest scope, that is, interpreting her comments as including among nonprivileged communications the most information possible, the trial court still admitted testimony of confidential communications. Furthermore, this evidentiary error is prejudicial.

Wheelock testified that Locke told her he had an uncontrollable sex drive and that he had a problem with pedophilia. Neither of these statements is within the scope of Wheelock's warning to Locke, even if the warning is given the broadest possible interpretation. Thus, both were confidential and should not have been admitted into evidence.[3] We determine that regardless of the admissibility of the other Wheelock testimony, this testimony alone is harmful error necessitating reversal.

---

uncovered during interviews with children. Section 48.981(2), Stats. Therefore, no statute aids the court in determining what Locke's reasonable expectation of his confidentiality was. It is also difficult to ascertain at what points Wheelock told Locke of these believed disclosure requirements.

[3] Locke also argues that his communications with Wheelock were privileged pursuant to sec. 51.30, Stats., and, even if not privileged, should have been suppressed as prior bad acts whose prejudicial effect outweighed their probative value. *See Plymesser*, 172 Wis. 2d at 594-95, 493 N.W.2d at 373. In *S.H.*, we concluded that sec. 51.30(6) provides that sec. 905.04, Stats., supersedes sec. 51.30 regarding communications between patients and social workers. The bad acts evidence determination lies within the discretion of the trial court and that its determination that the probative value outweighs the prejudicial effect is appropriate. *See S.H.*, 159 Wis. 2d at 736, 465 N.W.2d at 240; *Plymesser*, 172 Wis. 2d at 595, 493 N.W.2d at 373.

### 3. Error is Prejudicial

■■■■

The test for harmful error in Wisconsin remains that originally stated in *State v. Dyess*, 124 Wis. 2d 525, 540-42, 370 N.W.2d 222, 230-31 (1985). The reviewing court must set aside the verdict unless it is sure the error did not influence the jury or had such slight effect as to be de minimus. *Id.* at 541-42, 370 N.W.2d at 231. The reviewing court must determine whether there is a reasonable possibility that the error contributed to the conviction. *Id.* at 543, 370 N.W.2d at 231-32. In assessing this, our focus is on whether the error undermines our confidence in the outcome of the case. *Id.* at 545, 370 N.W.2d at 232. Here, the erroneous inclusion of testimony that Locke had an "out-of-control sex drive" and a "problem with pedophilia," in cases where his defense was that any touching was unintentional, contributed to the conviction. Even assuming without deciding that the other Wheelock testimony is admissible because of her warnings to Locke, the erroneous inclusion of the "out-of-control sex drive" and "pedophilia" comments undermines our confidence in the outcome of this case. Therefore, we remand this case for a retrial.

We need not reach either the continuance or sentencing issues because we are remanding this case for retrial. Section 971.165(1)(c), Stats., provides several necessary exceptions to the requirement that the same jury try both the plea of not guilty, and the plea of not guilty by reason of mental disease or defect. These exceptions state that where an appellate court reverses a judgment as to the insanity plea, the defendant is not entitled to a redetermination on the not guilty plea. Wisconsin courts have also held this. *State v. Koput*, 142 Wis. 2d 370, 398, 418 N.W.2d 804, 816 (1988). The

converse, however, is not called for by statute or case law. In fact, sec. 971.165(1)(a), states "[t]he plea of not guilty shall be determined first and the plea of not guilty by reason of mental disease or defect shall be determined second." Thus, our remand for retrial of the first phase necessarily allows Locke the opportunity for a retrial on the second phase. Therefore, the continuance issue is moot.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded.