**UNITED STATES of America, Plaintiff,**

v.

**Ronald SCHWENSOW, Defendant.**

**No. 95–CR–224.**

United States District Court,
E.D. Wisconsin.

Oct. 3, 1996.

Daniel T. Flaherty, Milwaukee, WI, for Plaintiff.

William Kerner, Milwaukee, WI, for Defendant.

### *ORDER*

CURRAN, District Judge.

Before the court is the motion of Ronald Schwensow to suppress statements made to Blake Schicker and Nancy Curran on the grounds that the communications were subject to the psychotherapist privilege recently recognized by the Supreme Court in *Jaffee v. Redmond,* —— U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). In a well reasoned and comprehensive recommendation, United States Magistrate Judge Aaron E. Goodstein recommended that the motion be denied. The Defendant has filed an objection to the recommendation in which he argues that, although Schicker and Curran were volunteers manning the telephone at the Alcoholics Anonymous Office in West Allis, they counseled Schwensow by advising him not to return to his home but to proceed directly to the Detox Center and that Schwensow thus reasonably believed that they were counselors and that the communications made to them would be kept confidential.

The court has reviewed the transcript of the hearing conducted on August 26 and 28, 1996, and have concluded that the statements made to Schicker and Curran do not fall within the ambit of the psychotherapist privilege. In recognizing the psychotherapist

privilege and extending it to licensed social workers, the Supreme Court specifically held that the confidential communications were to be made in the course of psychotherapy. *Id.* at ——, 116 S.Ct. at 1931. The encounter between Schwensow, Schicker, and Curran in no way resembled a psychotherapy session. Schwensow's purpose for presenting himself at the Alcoholics Anonymous Office was to obtain help in finding a detox center. Schicker and Curran provided that help and statements by Schwensow involving the bag containing the firearm are not entitled to suppression. Accordingly,

IT IS ORDERED that the Magistrate Judge's recommendation IS ADOPTED as the court's order. The motion of the Defendant to suppress statements IS DENIED.

GOODSTEIN, United States Magistrate Judge.

On December 12, 1995, a federal grand jury for the Eastern District of Wisconsin returned a two count indictment charging Ronald E. Schwensow in both counts with being a felon in possession of a firearm in violation 18 U.S.C. § 922(g)(1). The defendant was arraigned on December 15, 1995 before this court and plead not guilty. A jury trial is scheduled to commence before Judge Thomas J. Curran on October 7, 1996, with a final pretrial conference to commence on September 20, 1996. The defendant has filed a motion to suppress statements which is fully briefed and ready for resolution.

Schwensow moves to suppress statements he made to Blake Schicker and Nancy Curran on November 29, 1995, on the grounds that those statements are privileged, confidential communications under Fed.R.Evid. 501. An evidentiary hearing was conducted on January 5, 1996, regarding Schwensow's initial motion to suppress statements he made to police officers and to suppress items of evidence seized from 1700 W. National Avenue. Following that hearing, this court recommended that the motion be denied. The recommendation was adopted by Judge Curran who also denied Schwensow's motion to suppress statements based on a "therapist/patient" privilege. However, the issue of whether Schicker and Curran were "psycho-therapists" was not adequately explored because it was only subsequent to the evidentiary hearing and Judge Curran's order that the United States Supreme Court, on June 13, 1996, issued its decision in *Jaffee v. Redmond, et al.,* —— U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), in which the Court held that a "psychotherapist privilege" should be recognized under Rule 501.

On July 26, 1996, Schwensow moved that the court reconsider its previous ruling regarding the confidentiality of statements that Schwensow made to Schicker and Curran, based on the Supreme Court's ruling in *Jaffee.* On August 26, 1996 and August 28, 1996, the court conducted evidentiary hearings. Schicker and Curran testified for the government and Ronald Schwensow testified on his own behalf. Based on the testimony elicited at the hearing, the court makes the following findings of fact.

## A.  FINDINGS OF FACT

On the night of November 28, 1995, Schwensow testified that he spoke with a counselor at the Milwaukee County Mental Health Complex. He and the counselor discussed the possibility of Schwensow entering an alcohol detoxification program. Schwensow expressed some concern that his alcohol problem remain confidential. The counselor explained to Schwensow that a new Wisconsin law mandated that personal communications made between counselors and patients remain confidential.

On the night of November 29, 1995, Schwensow was starting to suffer from the effects of alcohol withdrawal and had decided to enter a detox center. He went to the West Allis Public Library to look for the address or telephone number of a detox center or the Milwaukee County Mental Health Complex. He could not recall the name or telephone number of the counselor he had talked to the night before because he was intoxicated during that conversation. While at the library, Schwensow was unsuccessful at finding an address or phone number for either the detox center or the Mental Health Complex, but a librarian referred him to the Alcoholics Anonymous ("AA") office located approximately four blocks away.

Schwensow walked to the AA office and knocked on the door. Although the office was closed, two telephone hotline volunteers were inside, Blake Schicker and Nancy Curran. Schicker answered the door and Schwensow asked whether he could use the office telephone to contact the Milwaukee County Mental Health Complex and enter detox. Schicker testified that he allowed Schwensow to use the phone because it appeared that he needed help—Schwensow looked sick and appeared to Schicker to be suffering from alcohol withdrawal.

The AA Central Office does not conduct counseling sessions of any kind but primarily sells books, pamphlets and tapes. The duties of the telephone hotline volunteers are mainly to provide people with locations and phone numbers for AA meetings throughout the Milwaukee area. Neither Schicker nor Curran are counselors of any kind. Rather, as part of the AA 12–step program to recovery, they help other alcoholics and volunteering for the telephone hotline is a way to provide such assistance. Schicker and Curran never presented themselves to Schwensow as counselors and Schwensow never asked whether Schicker or Curran were counselors. In addition, there was no indication in the office that any licensed counselors were on the premises.

Schwensow contacted the Milwaukee County Mental Health Complex but was unable to reach the counselor he had spoken with the night before. He was advised that the Mental Health Complex would not admit him to their detox facility because Schwensow lead them to believe that he was suicidal. During this time, Schicker and Curran told Schwensow that entering detox was an excellent idea, but that it was only the first step to sobriety. Schwensow testified that Schicker and Curran were "very take-charge, very professional" and seemed accustomed to dealing with alcoholics. Schwensow testified that he believed that Schicker and Curran were "some sort of counselors."

Schicker then spoke to the person at the Mental Health Complex and was informed that Schwensow should go to the public detox facility on 12th Street and Highland Avenue in Milwaukee. Schicker offered to drive Schwensow, but Schwensow said that he first wanted to take the bag he was carrying to his friend Louie's house on 19th Street. Schicker and Curran asked if Louie was a drinker, and when Schwensow responded that Louie did drink, Schicker and Curran explained to Schwensow that he should not stop there because he would more than likely start drinking and not make it to detox. Schwensow then said he would take the bag to his house. However, Schicker and Curran did not think this was a good idea either because he would likely have alcohol at his house, look for an excuse to start drinking, and not make it to detox.

Curran then asked Schwensow why he needed to get rid of the bag before entering detox. Schwensow testified that he told Curran that it was Louie's bag and he did not want to take it to detox because he did not know what he was getting himself into at detox. Curran told Schwensow that he should leave the bag at the AA office where it would be secure. Schwensow agreed and Schicker then drove him to the public detox facility.

On the way to detox, Schwensow and Schicker discussed that they both came from alcoholic families. Schicker provided Schwensow with his home telephone number and gave him money to call Schicker when Schwensow left detox. Schicker told him that he would help Schwensow to get into a program to help alcoholics.

When Schicker returned to the AA Central Office, he and Curran discussed the bag. Schicker suspected that the bag contained some sort of contraband. Schicker decided to open the bag because he did not want himself, Curran or AA responsible for the contents of the bag. Schicker and Curran opened the bag, discovered a gun and then contacted the police.

## B. ANALYSIS

Schwensow moves to suppress all statements made to Schicker and Curran, arguing that such statements are confidential under the "psychotherapist" evidentiary privilege recently acknowledged by the Supreme Court in *Jaffee*, —— U.S. ——, 116 S.Ct.

1923, 135 L.Ed.2d 337 (1996). The government contends that such statements are not privileged because Schicker and Curran are not licensed counselors, the relationship justifying confidentiality is lacking, and no reasonable person would expect that statements made to Schicker and Curran were confidential.

In *Jaffee,* the defendant, who was seeking to assert the privilege, had participated in approximately 50 counseling sessions with a clinical social worker licensed by the State of Illinois and employed by the Village of Hoffman Estates. *See Jaffee,* —— U.S. at ——, 116 S.Ct. at 1926. The Court held that a "psychotherapist" privilege should be recognized under Fed.R.Evid. 501, which includes confidential communications made to licensed psychotherapists and licensed social workers in the course of psychotherapy. *Id.,* at ——, 116 S.Ct. at 1931.

The Court reasoned that important private interests are served by an evidentiary privilege for "psychotherapists" because the sensitive nature of communications made during counseling sessions may cause "embarrassment or disgrace," and the possibility of disclosure may impede successful treatment. *Id.,* at ——————, 116 S.Ct. at 1928–29. The Court also noted that a psychotherapist privilege serves the public interest because it facilitates appropriate treatment for those suffering mental illnesses and mental health is "a public good of transcendent importance." *Id.,* at ——, 116 S.Ct. at 1929.

However, the Court did not define who falls under the definition of "psychotherapist," other than licensed psychiatrists, psychologists and social workers. The Court left such details for lower courts to decide on a case-by-case basis. *Id.,* at ——, 116 S.Ct. at 1932. The starting place for this analysis should be with Rule 501 itself, which states: "Except as otherwise required by the Constitution of the United States or provided by the Supreme Court pursuant to statutory authority, the privilege of a witness, person ... shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501.

Thus, federal common law governs the scope of privileges under Rule 501.

In attempting to apply federal common law in this instance, it should be noted that prior to *Jaffee,* only three federal circuits had recognized the "psychotherapist" privilege. *See Jaffee v. Redmond,* 51 F.3d 1346 (7th Cir. 1995), *aff'd,* —— U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (on appeal the Supreme Court upheld the Seventh Circuit's recognition of the privilege, but rejected the Circuit's balancing approach, holding that all confidential communications made by a patient to a "psychotherapist" are privileged); *In re Doe,* 964 F.2d 1325 (2d Cir.1992); *In re Zuniga,* 714 F.2d 632 (6th Cir.), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983). Three circuits had rejected the privilege. However, each of the circuits that had recognized the privilege and attempted to apply federal common law, also emphasized the importance of state law. See *Jaffee,* 51 F.3d at 1356.

■ Federal courts may resort to state law analogies for the development of a common law of privileges when the federal rule is unsettled. *Id.* at 1357 (citing *William T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 104 (3d Cir.1982). Since a psychotherapist privilege had been adopted in all 50 states and the District of Columbia prior to *Jaffee,* it is appropriate and instructive to look to state law for guidance in determining the scope of the privilege.

■ The psychotherapist privilege is statutorily derived in Wisconsin. A patient has the privilege to refuse to disclose confidential communications made to licensed physicians, psychotherapists, social workers and counselors. *See* § 905.04, Wis.Stats. A "patient" is defined as a person who consults with or is examined or interviewed by a physician, psychotherapist, etc. *See* § 905.04(1)(c). A "confidential" communication is defined as communication not intended to be disclosed to third persons other than those present "to further the interest of the patient in the consultation, examination or interview...." § 905.04(1)(b), Wis.Stats. If a communication is "confidential," it is not to be disclosed if the communication is made

"for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition." § 905.04(2), Wis.Stats. Included within the scope of the privilege are licensed physicians, registered nurses, chiropractors, psychologists, social workers, and marriage and family therapists. *Id.* Also within the scope of the privilege are persons reasonably believed by the patient to be physicians, professional counselors, psychologists, registered nurses and social workers. § 905.04(1)(d)–(g). "The patient's objectively reasonable perceptions and expectations of the medical provider are the proper gauge of the scope of the sec. 905.04 privilege." *State v. Locke,* 177 Wis.2d 590, 604, 502 N.W.2d 891, 897 (App.1993).

█ Regarding the "confidentiality" aspect of the communication, in *Jaffee* the court noted that the privilege only protects "confidential communications, i.e., all the information learned by the psychotherapist or counselor *during treatment that is necessary for treatment.*" *Jaffee,* 51 F.3d at 1357, n. 18 (emphasis added).

█ In the instant case, there is no dispute that neither Schicker nor Curran possessed the credentials of those entitled to receive the privileged communication. They were not licensed physicians, psychotherapists, counselors or social workers. Schicker testified that he has a bachelor's degree in marketing and has never had any training in psychotherapy or counseling. Similarly, Curran testified that she has an associate's degree in hotel/restaurant management and has never had any training in psychotherapy or counseling. Thus, Schwensow bears the burden of establishing that he reasonably believed Schicker and Curran to be psychotherapists.

It is undisputed that Schicker and Curran did not hold themselves out to Schwensow as psychotherapists, and Schwensow did not ask whether they were psychotherapists. Nor did the AA office where Schwensow encountered Schicker and Curran contain any outward indication that professional counselors were on hand, such as licenses or signs on the walls. Moreover, Schwensow states that he has had a long history of contact with counselors and social workers. Schwensow testified that, since 1952, he has been at various institutions where he has entered group therapy programs and has encountered assorted counselors, parole officers and case workers. Schwensow testified that when he had previously encountered such persons they clearly conveyed their positions to him. Schwensow claims that he perceived Schicker and Curran to be counselors of some kind, but given his previous experience with counselors, the fact that he was usually informed by his counselor of their status and that he had previously undergone counseling in a more controlled setting, his assertion lacks credibility.

More importantly, Schwensow did not approach the AA office, nor Schicker and Curran, for counseling services. Rather, Schwensow testified that he approached the AA office to use their telephone in order to access a detox center. It was only after he had made the decision to enter detox, and after he was unable to locate the telephone number for the Mental Health Complex, that he went to the AA office. Thus, the AA office served the same purpose as the library—it offered Schwensow a means of contacting a detox center. Schwensow did not approach the AA office for treatment or counseling, just as he did not approach the library for treatment or counseling.

Schicker and Curran simply facilitated Schwensow's prior decision to enter detox by providing him the use of a telephone and transportation. In this respect, Schicker functioned no differently than a cab driver. While Schicker and Curran encouraged Schwensow to seek treatment for his alcoholism, theirs was support of a general, human nature, as opposed to something akin to advice a counselor would give to a patient. Schwensow had already decided to enter detox; Schicker and Curran supported his decision, but certainly did not make a diagnosis that Schwensow as an alcoholic or prescribe any treatment.

█ Finally, even if Schwensow reasonably perceived Schicker and Curran to be counselors, the communication regarding the bag was not related to either diagnosis or treatment. Schwensow testified that he told

Schicker and Curran that he did not want to take the bag to detox because he wanted to protect it for a friend. He also told them that he was not the owner of the bag.

Schwensow's testimony reinforces the fact that he should not have expected any confidentiality regarding his statements about the bag. He testified that the Mental Health Complex counselor informed him that Wisconsin law prohibited mental health counselors and social workers from disclosing a patient's statements about "personal things." Thus, since Schwensow claimed the bag belonged to a friend, and since it did not relate to his personal condition, neither Schwensow or any reasonable person should have expected these statements to be considered confidential, even if a counselor was the recipient of the communication. Schwensow acknowledges that he was aware of a distinction between communications made to a counselor that are personal and confidential, and those that are not personal or confidential.

Moreover, the statements Schwensow made to Schicker and Curran do not meet the justifications for invoking the "psychotherapist" privilege. In *Jaffee,* the Supreme Court stated that the important private interests are served by the privilege because of the sensitive nature of the problems for which individuals consult psychotherapists and the possibility that disclosure would cause embarrassment or disgrace. *Jaffee,* —— U.S. at ——–——, 116 S.Ct. at 1928–29. In the instant case, Schwensow did not consult Schicker and Curran for a personal problem, he consulted them for use of their phone, and the statements he made regarding the bag were not personal nor related to his problem with alcoholism.

The Supreme Court also stated that important public interests are served by the psychotherapist privilege because it facilitates the appropriate treatment for individuals suffering mental or emotional problems. *Id.,* at ——, 116 S.Ct. at 1929. Again, suppressing the statements that Schwensow made regarding the bag do not serve the public interest because such statements were not made for the purpose of gaining treatment.

Finally, another distinction between *Jaffee* and the instant case is that the long-term relationship between patient and counselor is lacking in the case at bar. In *Jaffee,* the "psychotherapist" participated in 50 counseling sessions with the patient. By contrast, Schwensow had never met Schicker or Curran before he encountered them at the AA office and this encounter lasted no longer than one hour.

In summary, because Schicker and Curran are not "psychotherapists," because Schwensow fails to establish that he reasonably believed that they were "psychotherapists," and because Schwensow's statements to Schicker and Curran were not made for the purpose of gaining treatment, Schwensow's motion to suppress statements should be denied.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to suppress statements be denied.

Any objection to this recommendation must be filed with the Clerk of Court in duplicate within ten days of it receipt, or prior to the final pretrial conference, whichever is earlier. Failure to file an objection within the specified time waives the right to appeal the district court's order on all factual and legal issues.

Dated at Milwaukee, Wisconsin, this <u>10th</u> day of September, 1996.