COURT OF APPEALS
DECISION
DATED AND FILED

August 18, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP1798-CR**
**2019AP1799-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2015CF4717**
**2016CF1835**

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

     PLAINTIFF-RESPONDENT,

  V.

TYRELL S. TOLBERT,

     DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before Dugan, Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Tyrell S. Tolbert appeals judgments of conviction, following a jury trial, of multiple charges.   We affirm.

## BACKGROUND

**The Complaint**

¶2     On October 30, 2015, Tolbert was charged with:  (1) one count of first-degree reckless homicide as a party to a crime with the use of a dangerous weapon; (2) two counts of first-degree recklessly endangering safety as a party to a crime with the use of a dangerous weapon; (3) one count of felony bail jumping; and (4) one count of possession with intent to deliver a controlled substance (heroin).

¶3     According to the criminal complaint, the charges stemmed from a shooting that occurred on August 14, 2015, that resulted in the death of Willis Brownlee.   The complaint states that Tolbert and his cousin, Damontae Mullins, fired multiple gunshots into a garage within minutes of Brownlee's arrival.   Police recovered seven nine-millimeter casings and six .40-caliber casings from the scene, along with a large plastic baggie containing four smaller baggies, each containing a substance later identified as heroin.   Forensic testing detected Tolbert's DNA on the bag of heroin.   The complaint states that the bag was found "in the flight path of the homicide perpetrators suggesting that one or both of the fleeing shooters may have dropped [it.]"   The complaint also identifies multiple witnesses.

¶4     After pretrial proceedings began for the August 14 incident, the State filed another criminal complaint charging Tolbert with:  (1) one count of first-degree recklessly endangering safety with the use of a dangerous weapon; (2) one

count of endangering safety with the use of a dangerous weapon; and (3) one count of felony bail jumping. The complaint alleged that on August 3, 2015, Tolbert fired multiple gunshots into a residence. The victim told police that while she was in her home, she saw movement outside of the home near her parked vehicle. The victim told police that she looked out of a window and witnessed a man, whom she later identified as Tolbert, fire multiple shots into her home. Police recovered thirteen bullet casings from the site.

**The State's Motion for Joinder and to Admit Other Acts Evidence**

¶5    The State filed a motion to join the August 3 and the August 14 incidents on the grounds that the two incidents shared "a common scheme or plan," had "overlapping evidence," and provided "strong evidence of [the defendant] as one of the shooters responsible for the homicide of Willis Brownlee." Specifically, the motion argued that: (1) casings found at the scene of both shootings came from the same firearm; (2) that a witness identified Tolbert as the August 3 shooter; (3) that Ashley Nelson told police that she drove Tolbert and Mullins to the location where the August 14 shooting occurred; (4) that Nelson told police that after the two men exited the car she heard multiple gunshots, and then the men returned to the car; and (5) that Tolbert later realized he dropped the heroin baggie at the scene of the August 14 shooting and instructed Nelson to drive back to the scene to locate the dropped heroin.

¶6    The motion also sought the admission of other acts evidence that shortly before the August 3 shooting, Tolbert and Mullins participated in a drug transaction involving a confidential informant in Sheboygan County; specifically, that Tolbert sold and/or delivered heroin to the informant. The State argued that the evidence "supports plan, identification, and method of operation as why

3

Tolbert had the heroin in the first place," and "also explains why Tolbert wanted the heroin back the day of the homicide incident[.]"

¶7 At a hearing on the motion, the trial court granted the State's motion for joinder, stating:

> I think based on the similarities here that there is a sufficient—there is sufficient evidence to support joinder of these matters. They do have a common factor, the same gun. They do occur relatively close temporal proximity as well as geographical proximity. They may involve the similar motive of the defendant acting as an instrument of others. I think with—in light of that information that it is appropriate to join these matters for trial.

The trial court also noted that both shootings stemmed from disputes that did not directly involve Tolbert, rather he was acting as an "instrument of others."

¶8 As for the other acts evidence, the trial court determined that the evidence of Tolbert's involvement in the Sheboygan drug sale satisfied the *Sullivan*[1] analysis because it was highly probative as to identity with regard to the drug count and the identity of Tolbert as one of the shooters on August 14, and its probative value was not substantially outweighed by the danger of unfair prejudice.

**The Trial**

¶9 The matter proceeded to trial. During trial, Tolbert filed a motion seeking to cross-examine Nelson regarding her conduct in three other criminal proceedings, which Tolbert argued was relevant to her truthfulness as a witness. Nelson, who was Mullins's girlfriend on August 14, 2015, approached police

---

[1] *See* **State v. Sullivan**, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).

shortly after the August 14 incident and confessed that she had driven Mullins and Tolbert to and from the area where the shooting occurred. Nelson made multiple statements implicating Tolbert and Mullins and told police that the heroin found at the scene belonged to Tolbert. Shortly after making these statements, Nelson recanted and left Wisconsin. Police apprehended Nelson and Mullins in Texas and Nelson reached a plea agreement with the State, wherein she agreed to testify truthfully at Tolbert's trial in exchange for reduced charges.

¶10 The crux of Tolbert's motion was that Nelson's conduct, i.e., providing a statement, recanting, and then providing a statement again, was consistent with Nelson's conduct in three other criminal proceedings. Tolbert sought to cross-examine Nelson about her pattern of recanting statements to police.

¶11 The trial court denied the motion, stating that while Nelson's previous conduct had some probative value to Nelson's truthfulness in Tolbert's case, that value was substantially outweighed by the risk of misleading the jury, confusion of issues, undue delay, and waste of time.

¶12 Several witnesses, including Nelson, testified at trial tying Tolbert to both the August 3 and the August 14 shootings. The jury convicted Tolbert of all counts. This appeal follows. Additional facts will be included as relevant to the discussion.

## DISCUSSION

¶13 On appeal, Tolbert contends that the trial court erred in: (1) joining the August 3 and August 14 incidents for trial; (2) granting the State's motion to admit other acts evidence of Tolbert's heroin delivery to a confidential informant;

5

and (3) denying his motion to cross-examine Nelson about her conduct in previous criminal actions.  We address each issue.

**Joinder**

¶14    Tolbert argues that the trial court erred in granting the State's motion for joinder because "there is almost no overlap of witnesses, there is no evidence that the motive in each case was similar, the modus operandi in each case was not similar, and, thus, the incidents do not appear to be part of a series."

¶15    Joinder of charges, pursuant to WIS. STAT. § 971.12 (2017-18),[2] is proper when two or more crimes are of the same or similar character and occur over a relatively short amount of time, or when they arise from the same act or transaction.  *State v. Locke*, 177 Wis. 2d 590, 596, 502 N.W.2d 891 (Ct. App. 1993).  Joinder is proper if the crimes charged "have a common factor or factors of substantial factual importance, [e].g., time, place, or [m]odus operandi, so that the evidence of each crime is relevant to establish a common scheme or plan that tends to establish the identity of the perpetrator."  *Francis v. State*, 86 Wis. 2d 554, 560, 273 N.W.2d 310 (1979).  The joinder statute "is to be broadly construed in favor of initial joinder."  *State v. Salinas*, 2016 WI 44, ¶31, 369 Wis. 2d 9, 879 N.W.2d 609.  The trial court's initial decision to join charges for trial is a question of law that we review *de novo.  See id.*, ¶30.

¶16    We agree with the State that the two shootings were connected by common factors and shared a common scheme or plan.  The shootings occurred

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted

within two weeks of each other and within a fifteen-block radius. As the trial court noted, both shootings also involved two men shooting at people in their homes for the purposes of third-party retaliation. In other words, Tolbert was not directly connected to either shooting victim and was acting on another's behalf. Ballistics reports matched the bullet casings found at both crime scenes, a fact relevant to establishing the perpetrator of both shootings. Accordingly, we conclude that the trial court properly joined the cases.

**Other Acts Evidence**

¶17 Tolbert next contends that the trial court erred in admitting evidence that Tolbert delivered heroin to a confidential informant in Sheboygan County days before the August 3 shooting. Tolbert contends that "because the purpose for which it was admitted is not a contested matter … the unfair prejudice greatly exceeds the probative value."

¶18 Admissibility of other acts evidence is governed by a three-step test: the evidence must be admitted for an acceptable purpose under WIS. STAT. § 904.04(2); it must be relevant; and its probative value must not be substantially outweighed by the danger of unfair prejudice. *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). The trial court's determination "to admit or exclude evidence is a discretionary determination that will not be upset on appeal" absent an erroneous exercise of discretion. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262 (Ct. App. 1992) (citation omitted). Accordingly, we will sustain an evidentiary ruling if "the trial court examined the relevant facts, applied a proper standard of law, and ... reached a conclusion that a reasonable judge could reach." *See Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶19     Because Tolbert does not contest the purpose of the evidence's admissibility, we address whether the evidence was relevant and whether the probative value was substantially outweighed by the risk of unfair prejudice.

¶20     The trial court found the evidence relevant as it related to the identification of the perpetrator of the August 14 shooting, noting that the evidence had "a tendency to make that identification more probable ... by connecting [Tolbert] to the heroin delivered on July 30 and to the heroin that is found at the scene of the homicide. It does make the identification more likely." The trial court also stated that the evidence was relevant to the State's burden to prove that Tolbert possessed the heroin found at the homicide and that he intended to deliver it. It explained that Tolbert had not conceded or stipulated on those points, and as a result, the State still bore the burden of proving those elements.

¶21     As to the risk of unfair prejudice, the trial court acknowledged "some risk of unfair prejudice" in terms of the possibility that the jury could infer that Tolbert was guilty of possession or was willing to commit the homicide based on the Sheboygan heroin sale, but ultimately determined that the risk of unfair prejudice did not substantially outweigh the probative value of the evidence. Moreover, the trial court cautioned the jury to weigh the Sheboygan other acts evidence solely with regard to the permissible purpose for which it was admitted, that it could not consider it to conclude that Tolbert had a particular trait or acted in conformity with that trait with respect to the crimes in these cases, and that it could not use the evidence to conclude that Tolbert was "a bad person and for that reason is guilty of the offense charged." We presume that jurors follow the court's instructions. *See* ***State v. Truax***, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989).

¶22 Because the trial court examined the relevant facts, applied the proper standard of law, and reached a reasonable conclusion, we are satisfied that the trial court properly exercised its discretion in admitting this evidence.

**Cross-Examination of Nelson**

¶23 Finally, Tolbert argues that the trial court erred in denying his motion to allow the cross-examination of Nelson as to her conduct in previous criminal cases.

¶24 The trial court's decision to allow or deny cross-examination on a particular topic is a discretionary one. *State v. Lindh*, 161 Wis. 2d 324, 348, 468 N.W.2d 168 (1991). "The appellate court should reverse a trial court's determination to limit or prohibit a certain area of cross-examination offered to show bias only if the trial court's determination represents a prejudicial [erroneous exercise] of discretion." *Id.* at 348-49. We will affirm the trial court's exercise of discretion if the trial court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698.

¶25 "The proper standard for the test of relevancy on cross-examination is not whether the answer sought will elucidate any of the main issues in the case but whether it will be useful to the trier of fact in appraising the credibility of the witness and evaluating the probative value of the direct testimony." *Lindh*, 161 Wis. 2d at 348 (citation omitted). "There must be a reasonable relation between the evidence sought to be introduced and the proposition to be proved before the cross-examination will be allowed." *Id.*

9

¶26 The trial court acknowledged the potential relevancy of, as the State put it, Nelson's "statement-recantation-recantation pattern," but ultimately found that the testimony would not be useful to the jury as it ran the risk of being confusing, misleading, and unnecessarily time consuming. Specifically, the trial court stated:

> In weighing and balancing the probative value of the testimony in connection with [her previous conduct] against the risk—while it is relevant—against the risk of unfair prejudice—small—confusion of time—great—misleading the jury—great or greater I suppose—considerations of undue delay and waste of time—it is my conclusion that though relevant, the evidence is excluded because [its] probative value is substantially outweighed by those things that I just recited, danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay and waste of time.

¶27 Because the trial court examined the relevant facts, applied the proper standard of law, and reached a reasonable conclusion, we are satisfied that the trial court properly exercised its discretion.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

10