IN the MATTER OF the PROPOSED
GUARDIANSHIP & PROTECTIVE
PLACEMENT OF K.S.: MILWAUKEE
COUNTY PROTECTIVE SERVICES
MANAGEMENT TEAM, Appellant-Petitioner,

v.

K.S., Respondent.

Supreme Court

*No. 85–0649. Argued March 3, 1987.—Decided May 11, 1987.*

(Also reported in 405 N.W.2d 78.)

For the appellant-petitioner there was a brief and oral argument by *Louis Edward Elder,* corporation counsel, Milwaukee.

For the respondent there was a brief by *Robert W. Pledl* and *Courtney, Pledl & Molter, S.C.,* Milwaukee, and oral argument by *Robert W. Pledl.*

There was a brief filed on behalf of the guardian ad litem by *Jack Longert,* consulting attorney, *Legal Aid Society of Milwaukee, Inc.*

WILLIAM A. BABLITCH, J.   Milwaukee County Protective Services Management Team (Protective Services) appeals, arguing that various medical records of K.S. are not privileged under sec. 905.04(2), Stats. They argue that these medical records, as well as portions of psychological reports based on those records, are admissible evidence in the proceedings for the guardianship and protective placement of K.S. because of exceptions contained in sec. 905.04(4)(a) and (c). We find that these statutory exceptions to the

general rule of privilege do not apply. Accordingly, we affirm.

The pertinent facts in this case are undisputed. The "Petition for Appointment of Guardian and for Protective Placement" was filed by Protective Services in Milwaukee county on December 22, 1983. A comprehensive report regarding K.S. was filed with the court, as required by sec. 55.06(8), Stats., to assist it in determining the need for protective placement.

Protective Services also filed with the court a psychological evaluation regarding K.S.'s mental condition, prepared by a licensed clinical psychologist. The same psychologist prepared an updated evaluation of K.S. on December 23, 1984, which was filed with the court on January 10, 1985. Yet another examination was conducted on January 10, 1985, by another psychologist, and filed with the court on January 14, 1985. These evaluations were based on review of K.S.'s existing medical records at the Milwaukee County Mental Health Complex, as well as the psychologist's interviews with K.S.

Subsequent to the filing of the petition, the guardian ad litem reported to the court that K.S. objected to the guardianship and placement proceedings. Defense counsel was appointed by the court. Defense counsel demanded a jury trial and an independent psychological examination. On January 23, 1985, defense counsel received notice from Protective Services that K.S.'s medical records from Milwaukee County Mental Health Complex had been filed with the court. Defense counsel moved to suppress the medical records as well as any portions of the evaluations or testimony based on those records, arguing that this evidence was privileged and confidential. The motion to suppress was granted by the circuit

court, and summarily affirmed by the court of appeals which concluded that the records were privileged under sec. 55.06(17)(c), Stats.

There are two primary issues presented in this appeal: 1) whether the exception to the physician-patient, psychologist-patient privilege provided under sec. 905.04(4)(a), Stats., "proceedings for hospitalization," is applicable to the present proceedings involving guardianship and protective placement; and, 2) whether the contents of these medical records are admissible evidence under sec. 905.04(4)(c), "Condition an element of claim or defense."[1] The resolution of these issues requires an interpretation of sec. 905.04(4)(a) and (c). Construction of a statute is a question of law, and deference need not be given to the determinations of the lower courts. *DeMars v. LaPour,* 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985).

The privilege which K.S. asserts, through his attorney, is set forth in sec. 905.04(2), Stats. This subsection provides:

> "(2) GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's

[1]At oral argument, K.S.'s attorney conceded that under sec. 905.04(4)(b), Stats., the trial court possesses discretionary authority to release medical records in certain circumstances, pursuant to a lawful court order. Whether that concession is appropriate under subsection (b), however, was neither presented as an issue nor argued and we decline to consider it here.

chiropractor, the patient's psychologist or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor or psychologist."

Protective Services raises several preliminary arguments to support its contention that the privilege is inapplicable. It argues 1) that defense counsel lacks authority under sec. 905.04(3), Stats., to claim the privilege on behalf of K.S.; 2) that a patient must be "treated" as opposed to "merely examined," by an "actively practicing psychologist" in order for the privilege to apply; and 3) that the information contained in the medical records is not "confidential" as defined by sec. 905.04(1)(b). We do not find these arguments persuasive.

The suppression motion was appropriately filed by defense counsel on K.S.'s behalf. The statutes require *"representation* by full legal counsel ..." if the alleged incompetent, as here, is opposed to the guardianship petition. Section 880.33(2)(a)1, Stats. Consistent with his duty to represent K.S.'s stated objection to the petition, defense counsel seeks to suppress this evidence. Furthermore, the statutes clearly do not require treatment as a prerequisite for the invocation of privilege. Section 905.04(2) applies the privilege to confidential communications made or information obtained "for purposes of diagnosis *or* treatment." We also reject Protective Services' argument that the information contained in the medical records is not meant to be "confidential" under the statute. There is nothing to indicate that the information gathered and recorded in the medical records for purposes of

575

diagnosing or treating K.S. was intended to be disclosed to third parties.

We turn now to the principal arguments raised by Protective Services, i.e., whether certain explicitly enumerated exceptions to the general privilege are applicable to this proceeding. Protective Services argues first that sec. 905.04(4)(a), Stats., is applicable. That section provides:

> "(4) EXCEPTIONS. (a) *Proceedings for hospitalization.* There is no privilege under this rule as to communications and information relevant to an issue in proceedings to hospitalize the patient for mental illness, if the physician, registered nurse, chiropractor or psychologist in the course of diagnosis or treatment has determined that the patient is in need of hospitalization."

Protective Services argues that the present proceeding involving protective placement is a "proceeding to hospitalize" K.S. for mental illness, and thus the evidence falls within the purview of this exception to the general privilege. We disagree. The present application is not for hospitalization. The petition requests guardianship and protective placement, pursuant to chs. 880 and 55, Stats.

Significantly, protective placement does not require hospitalization. A protective placement is a placement for the primary purpose of providing residential care and custody, to protect persons who lack the capacity to protect themselves. Section 55.06(1) and (2), Stats. Protective placement may result from a mere inability to live independently in the community. In neither chs. 55 nor 880 has the legislature expressed an intent to interpret hospitalization so

576

broadly as to include all proceedings for guardianship and protective placement. Indeed, the declaration of policy in ch. 55 states that the purpose and policy of the statute is "to place the least possible restriction on personal liberty," while at the same time providing protective services to those persons in need of them. Section 55.001. Under this statute the subject may be placed in a nursing home, foster care, the subject's own home, or any other appropriate facility. *See* sec. 55.06(9)(a). Even in the event K.S. were ultimately placed in a locked ward of a hospital, or a complex which includes a hospital, it does not follow that the proceedings were "for hospitalization." The explicit language and policies of the statutes do not imply, and we believe it is strained to conclude as a matter of law, that guardianship and protective placement proceedings are tantamount to "proceedings for hospitalization" under sec. 905.04(4)(a).

Protective Services' argument that the "hospitalization" exception in sec. 905.04(4)(a), Stats., encompasses the present proceeding for protective placement is further undercut by an examination of the specific provisions of the second exception to the general rule of privilege, set forth in sec. 905.04(4)(b). The legislature amended this subsection in 1975, and added specific reference to protective placement. L. 1975, c. 393, sec. 40. The present subsection provides:

> "(b) *Examination by order of judge.* If the judge orders an examination of the physical, mental or emotional condition of the patient, *or evaluation of the patient for purposes of protective placement,* communications made in the course thereof are not privileged under this section with respect to the particular purpose for which the examination

is ordered unless the judge orders otherwise."
(Emphasis added.) Section 905.04(4)(b).

The inclusion of the specific term "protective placement" in subsection (b) demonstrates that the legislature understood the distinction between placement and the more general term "hospitalization," which otherwise arguably might be broad enough to include protective placement. If the legislature had also intended protective placement to apply to "hospitalization," under sec. 905.04(4)(a), it could easily have similarly amended that subsection to explicitly include reference to protective placement.

■ Protective Services also contends that the failure to specifically refer to protective placement within the "hospitalization" exception as well as within subsection (b), was legislative oversight. It argues that this court need not wait for corrective action by the legislature; rather, this court should judicially create an exception for protective placement, as Protective Services perceives we did in *State v. Hungerford*, 84 Wis. 2d 236, 267 N.W.2d 258 (1978). Protective Services' reliance on *Hungerford* is erroneous. *Hungerford* did not carve out an exception within sec. 905.04(4)(a), Stats. The case merely recognized that "proceedings for hospitalization" applied to recommitment proceedings as well as to the patient's initial commitment.

Hungerford was convicted of indecent behavior with a child, and was committed under the Sex Crimes Act. Subsequently, the Department of Health and Social Services entered an order extending the commitment. Hungerford moved to exclude from evidence at the hearing the testimony of two therapists from

578

Central State Hospital, on the grounds that the testimony was privileged under sec. 905.04(2), Stats. *Id.* at 238. Hungerford argued that the "hospitalization" exception was intended to apply only with respect to an initial commitment, not with respect to proceedings to determine the necessity of continued hospitalization. *Id.* at 241. This court held that "proceedings for hospitalization" under sec. 905.04(4)(a) included rehospitalization procedures. *Id.* at 242. Contrary to Protective Services' position, *Hungerford* provides no authority for a judicially created exception in this case. We must presume that the legislature will acknowledge an oversight if brought to their attention. If Protective Services' perception that this case involves legislative oversight is accurate, a corrective legislative amendment could easily be enacted.

Finally, Protective Services argues that the exception to the general privilege under sec. 905.04(4)(c), Stats., is applicable to this case. Subsection (c) provides:

> "(c) *Condition an element of claim or defense.* There is no privilege under this section as to communications relevant to or within the scope of discovery examination of an issue of the physical, mental or emotional condition of a patient in any proceedings in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense."

According to Protective Services, this subsection allows an exception to the privilege when the patient's mental, physical, or emotional condition is at issue. We disagree. Subsection (c) is only applicable to

proceedings in which the *patient* relies upon the condition as an element of his or her claim or defense. In this case, K.S. did not place his mental or physical condition in issue. Rather, it was Protective Services who placed his mental and physical condition in issue by initiating guardianship and protective placement proceedings. K.S. merely objected to the proceedings, and denied that he was in need of guardianship and placement. K.S., by objecting, is simply putting Protective Services to its proof. Under these circumstances, it would be inappropriate to read into the statutory scheme an exception to the claim of privilege based on nothing more than the privilege holder's act of objecting to the petition.

*By the Court.*—The decision of the court of appeals is affirmed.