IN the INTEREST OF JOY P., A Person Under the Age of 18:
STATE of Wisconsin, Petitioner-Respondent,

v.

JOSEPH P., Respondent-Appellant. [Case No. 95–2547]

IN the INTEREST OF TIFFANY P., A Person Under the Age of 18:
STATE of Wisconsin, Petitioner-Respondent,

v.

JOSEPH P., Respondent-Appellant. [Case No. 95–2548]

Court of Appeals

*Nos. 95–2547, 95–2548. Submitted on briefs January 11, 1996.—Decided February 14, 1996.*

(Also reported in 546 N.W.2d 494.)

On behalf of the respondent-appellant, the cause was submitted on the brief of *David H. Hickey* of *Hickey & Turim* of Waukesha.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas L. Storm*, district attorney.

On behalf of the guardian ad litem, the cause was submitted on the brief of *Frank J. Endejan* of *Zacherl, O'Malley & Endejan, S.C.* of Fond du Lac.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. This case primarily addresses the confidentiality of communications between incarcerated persons and Department of Corrections (DOC) psychologists in termination of parental rights cases (TPR). Here, Joseph P. appeals from orders terminating parental rights to his daughters, Joy P. and Tiffany P. He maintains that the trial court erred when it admitted testimony of two DOC psychologists who treated and evaluated him. Although we conclude that Joseph waived his right to challenge the testimony of one, we hold that he had an objectively reasonable belief that his discussions with the other would remain confidential and that the privilege thus applies. We also reject the State's argument that this testimony was nonetheless admissible under *State v. Hungerford*, 84 Wis. 2d 236, 267 N.W.2d 258 (1978). After reviewing the testimony that the trial court should have excluded, however, we hold that its admission was harmless error. We also address Joseph's two challenges to the trial court's discretion concerning the admission of other crimes evidence and its formulation of the dispositional order. We conclude that the trial court did not misuse its discretion and affirm.[1]

In 1991, Joseph pled no contest to sexually assaulting Joy, who was then three years old, and Tiffany, who was then three months old. These assaults form the basis for the State's current TPR action.

---

[1] This case was originally a one-judge appeal, but this court, because of the significance of the privilege issue, ordered it to be heard by a three-judge panel. *See* RULE 809.41, STATS. We also invited the DOC to file an amicus brief. The DOC and the attorney general declined the opportunity to participate.

231

We first address Joseph's argument that the trial court erred when it admitted statements he made to the DOC psychologists. Dr. Debra Anderson evaluated him during the intake process, and Dr. Michael VandenBrook became his treating psychologist at the Kettle Morraine Correctional Institution.

Before trial, Joseph moved in limine to exclude any testimony from these psychologists as privileged "psychologist-patient" communications. *See* § 905.04(2), STATS. The trial court found, however, that these visits had been court ordered and thus these statements fit an exception to the general privilege. *See* § 905.04(4)(b). Reacting to Joseph's argument that there were no such orders, the trial court noted that he could renew his objection before each psychologist testified.

Nonetheless, Joseph raised no objection when the State called VandenBrook, but did renew his objection to Anderson. Through voir dire, Joseph established that Anderson did not evaluate him pursuant to a court order. And based on other background information about the relationship, Joseph argued that any of the statements he made to her pertained only to his criminal sentence and could not be used against him in this distinct, TPR proceeding. The State then argued that even if there was no court order, the communication was nonetheless still without privilege. The State offered *Hungerford* for the proposition that communications by an incarcerated person to a psychologist are not privileged where the interview is not because the incarcerated person has retained the psychologist but because the communication is part of DOC procedure. It drew an analogy between Joseph's psychological evaluation during intake and the blood sample that police may freely request from a suspected intoxicated

driver. The trial court sided with the State, stating that it would "allow the testimony to come in under *Hungerford*."

On appeal, Joseph renews his objection to the testimony furnished by both psychologists. This issue requires us to construe § 905.04, STATS., which is a question of law reviewed independently of the trial court. *See State v. Locke*, 177 Wis. 2d 590, 602, 502 N.W.2d 891, 896 (Ct. App. 1993).

Initially, we must address the State's claim that Joseph waived his right to object to VandenBrook's testimony. As detailed above, when the trial court denied his motion in limine, it invited Joseph to renew an objection at trial. Since he failed to do so, we conclude that he waived his right to bring a challenge on appeal. *See Macherey v. Home Ins. Co.*, 184 Wis. 2d 1, 13, 516 N.W.2d 434, 438-39 (Ct. App. 1994). Moreover, Joseph's brief concedes that he "did not voir dire Dr. VanderBrook [sic] prior to his testimony." Thus, even if we were to review the issue as an exercise of discretion, *see Vollmer v. Luety*, 156 Wis. 2d 1, 12, 456 N.W.2d 797, 802 (1990), this court has an inadequate record with which to evaluate the tenor of his relationship with VandenBrook.[2]

However, when he renewed his objection to Anderson, Joseph conducted a voir dire and made a record of her relationship with him. We thus proceed to the merits.

---

[2] We observe that Joseph may have made a strategic choice when he declined to renew his opposition to VandenBrook's testimony. For example, VandenBrook seemed somewhat optimistic that Joseph might respond well to treatment because he "has . . . taken responsibility for his actions."

Our analysis begins with § 905.04(2), STATS., providing that a patient may prevent disclosure of "confidential communications" made for purposes of "diagnosis or treatment." In addition, § 905.04(1)(b) defines a "confidential communication" as one "not intended to be disclosed to 3rd persons other than those present to further the interest of the patient." Here, Joseph points to how Anderson informed him that the purpose of his evaluation was to determine his "treatment and placement needs" in the correctional system. Thus, Joseph asserts that the discussions he had with Anderson fall within the ambit of protected patient communications.

In response, the State explains that Anderson gave Joseph a prison manual which informed him that the results of the evaluation would be shared with "other team members" suggesting that Joseph knew that what he told Anderson would not be kept confidential. It also notes that Anderson believed that her evaluation of Joseph was not part of a psychologist-patient relationship.

After reviewing the record outlining Joseph's relationship with Anderson, we hold that these communications were subject to the privilege set out in § 905.04, STATS., and that the trial court erred when it allowed this testimony. To benefit from the privilege, Joseph must show that he had an "objectively reasonable" belief that the discussions were "confidential" and made for the "purposes of diagnosis or treatment." *See Locke*, 177 Wis. 2d at 603, 605, 502 N.W.2d at 897-98; § 905.04(2). Here, the record shows Anderson informed Joseph that what he told her would be used for his treatment while he was in the system. Although she told him that the results would be shared with her

colleagues, as the statute contemplates, this should not affect a reasonable person's belief that what he or she told a treating psychologist would still remain confidential outside the psychological "team." *See* § 905.04(2). Further, Anderson's perception of her relationship with Joseph is simply not relevant to our inquiry as we only look to the patient's beliefs. *See Locke*, 177 Wis. 2d at 604, 502 N.W.2d at 897. In sum, Joseph had good reason to think that his discussions with Anderson were intended only for his benefit and would therefore remain private.

Nonetheless, the State argues that the trial court ruled correctly when it reasoned that *Hungerford* provides an exception allowing disclosure of otherwise privileged communications to individuals evaluated during incarceration. Since Joseph's evaluation occurred during the course of his criminal sentence, the State claims that these communications are outside the scope of protected communications and were thus properly admitted in this TPR action.

We reject this argument. Contrary to the State's reading, *Hungerford* did not carve out a special exception for privileged communications gathered from incarcerated persons. Rather, it held that the statutory exception allowing disclosure in "[p]roceedings for hospitalization" included those disclosures made by Hungerford, who was then committed under the Sex Crimes Act. *See Hungerford*, 84 Wis. 2d at 240-42, 267 N.W.2d at 261-62 (interpreting § 905.04(4)(a), STATS., 1975). The trial court's reliance on *Hungerford* was misplaced because this TPR proceeding does not include a legal "proceeding for hospitalization" and is

distinct from Joseph's criminal conviction and sentence.[3]

We recognize that our holding may have ramifications on future TPR proceedings involving parents convicted of abusing or assaulting their children. Nonetheless, as it currently stands, the Wisconsin privilege does not provide an exception to cover these situations.[4] Other jurisdictions have, however, created such exceptions. The State of Missouri, for example, has designed the following rule to govern TPR proceedings:

> No legally recognized privileged communication, except that between priest, minister, or rabbi and parishioner, and attorney client, shall constitute grounds for excluding evidence at any proceeding for the termination of parental rights.

Mo. ANN. STAT. § 211.459.4 (Vernon Supp. 1996). And in *Juvenile Officer v. V.F.*, 849 S.W.2d 608 (Mo. Ct. App. 1993), the court concluded that this statute, and a

---

[3] The interpretation of *State v. Hungerford*, 84 Wis. 2d 236, 267 N.W.2d 258 (1978), that we apply above was set out in *Milwaukee County v. K.S.*, 137 Wis. 2d 570, 405 N.W.2d 78 (1987). There, the court concluded that the county's earlier psychological evaluation of K.S. could not be admitted in a later placement proceeding. *K.S.*, 137 Wis. 2d at 576, 405 N.W.2d at 81. It specifically held that the "proceeding to hospitalize" exception in § 905.04(4)(a), STATS., 1985-86, did not include efforts to place a juvenile in protective placement. *K.S.*, 137 Wis. 2d at 576, 405 N.W.2d at 81. We observe, however, that this statute was subsequently amended to allow disclosure in such circumstances. *See In the Matter of the Amendment of Secs. 880.33(1) and 905.04(4), STATS.*, 151 Wis. 2d xxi (effective Jan. 1, 1990).

[4] There is an exception which allows testimony from health care providers who suspect that one of their minor patients has been abused. *See* § 905.04(4)(e), STATS.

236

related exception allowing disclosure in "any judicial proceeding relating to child abuse or neglect," permitted the state to introduce in a TPR action statements made by the father to social workers about his physical and sexual abuse of the children. *See id* at 610-11; *see also* MO. ANN. STAT. § 210.140 (Vernon 1983). Our legislature could reexamine the delicate balance between encouraging the free flow of information between health care providers and patients, and the public's interest in protecting children by removing them from abusive households, and arrive at a similar conclusion. But until it does so, we will construe the privilege as it stands.

■

Regardless of any error in the admission of Anderson's testimony, the State argues that there was other ample evidence to sustain the jury's verdict and urges us to affirm. According to the "harmless error" test, we may grant the State's request if it establishes to us that there is no reasonable probability of a different outcome on remand. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985).

The State instituted a three-prong attack against Joseph. First, it contended that he had caused substantial injury to Joy and Tiffany. Second, the State claimed that he exhibited a pattern of this abusive behavior. Last, it asserted that Joseph's behavior pattern is a substantial threat to the health of these children. *See* § 48.415(5), STATS.

As indicated in its closing arguments, the State urged that the testimony of both psychologists, but particularly Anderson's, revealed how any children in close contact with Joseph would face a substantial risk of being abused. Indeed, Anderson testified that Joseph posed a risk to the safety of his fellow inmates.

Since we have concluded that Anderson's testimony should not have been admitted, the focus of our inquiry becomes whether the jury would have reached the same conclusion about the risk Joseph posed to his children without her testimony. To meet its burden, the State points to the testimony of the police detective who investigated Joseph's sexual assault of his two daughters in 1991.

This officer's testimony was damaging. Joseph admitted to him that he inserted his fingers into Joy's vagina. Joseph also explained how he would "rub up and down repeatedly." He also described for the officer his concerns that he had caused some "redness" which might have created suspicions among workers at Joy's day care center.

According to the officer, Joseph also admitted to several episodes of similar sexual contact with his then three-month-old daughter Tiffany. Joseph also reported to the officer his fear that he was going to engage in similar conduct in the future. Joseph also mentioned how "both girls appeared to be smiling at him when he did this, and he felt . . . they enjoyed it." Finally, Joseph told the officer that he became sexually aroused during these physical contacts. To bolster this testimony, the State introduced evidence revealing that Joseph pled no contest to two felony counts for the sexual assaults that the officer described.

After considering the above evidence, we find that it alone provided sufficient grounds for the jury to conclude that Joseph had engaged in a pattern of behavior which created a substantial risk to Joy and Tiffany. Again looking at closing arguments, Joseph's attorney conceded to the jury that the officer's testimony affirmatively resolved the issue of whether Joseph had caused injury to his children.

Although Joseph contended that there was real dispute over the other two components of the State's case, that Joseph had engaged in a pattern of this harmful activity and posed a substantial risk of future harm, we conclude that the officer's testimony, corroborated with Joseph's no contest pleas, leave no doubt that the State could secure the same result if we remanded the case.

Joseph overestimates the harm that Anderson did to his defense. Although Anderson reached the conclusion that he was a "predatory individual," she acknowledged that "it can be difficult" to predict the future behavior of such individuals. Moreover, cross-examination of Anderson showed that she had spent only thirty to sixty minutes in face-to-face discussions with Joseph. The record thus suggests that her evaluation was really focused on how Joseph compared to other inmates and what services the DOC should provide to him.

In contrast, Joseph's discussions with the officer dealt directly with his past abuse of Joy and Tiffany. Here, the State gave the jury an actual example of how Joseph's behavioral problems affected his daughters. In this short piece of testimony, the jury also heard how Joseph was concerned about his being detected. Even without the expert opinion from Anderson, a jury could readily infer that Joseph repeatedly attacked his daughters and was aware that he must be more careful in the future or risk discovery. After comparing the two sets of testimony, we believe that much of Anderson's testimony was superfluous to the issue of whether Joseph posed a future risk to *his daughters*. Thus, we hold that the State has established that any error

resulting from the improper admission of her testimony was harmless error.

We next address Joseph's second evidentiary challenge. He contends that the trial court misused its discretion when it admitted other crimes evidence consisting of a sexual offense he committed in 1985 or 1986. *See State v. Plymesser*, 172 Wis. 2d 583, 591, 493 N.W.2d 367, 371 (1992).

The issue arose during VandenBrook's testimony when he noted that this prior offense served as the basis for his diagnosis. Joseph contends that such evidence had no relevance to whether his parental rights should be terminated as a result of his convictions in 1991.

After reviewing the record, however, we agree with the State that this evidence served as the basis for VandenBrook's expert opinion and that this ground was a "reasonable basis" for admitting this prior crimes evidence. *See id.*

Finally, we turn to Joseph's third issue on appeal. While he raises two specific concerns, both are challenges to the trial court's use of discretion when it ordered the termination of his parental rights. *See Rock County Dep't of Social Servs. v. K.K.*, 162 Wis. 2d 431, 441, 469 N.W.2d 881, 885 (Ct. App. 1991).

First, he claims that the trial court improperly valued certain factors when it developed its dispositional order. He argues that the trial court overvalued the possibility that terminating his parental rights and opening the path to adoption would give Joy and Tiffany a greater chance at living in a healthy home. Instead, he explains that the trial court should have focused on the children's "safety or welfare."

The record does indicate that the trial court heavily considered the children's chance for adoption. But these are appropriate grounds for a dispositional order. *See* § 48.426(3)(a), STATS. And contrary to Joseph's suggestion, the trial court also considered other appropriate factors, such as the health of the children and the strength of the relationship they had formed with their preadoptive parents. *See* § 48.426(3)(b), (f). We thus conclude that the trial court acted within the bounds of its discretion.

Joseph's second attack on the dispositional order is premised on its form. He complains that contrary to this court's holding in *Trieschmann v. Trieschmann*, 178 Wis. 2d 538, 504 N.W.2d 433 (Ct. App. 1993), the trial court did not make specific findings of fact and conclusions of law, but simply adopted the position advanced by the State. In *Trieschmann*, however, the trial court provided no indication of "why" it had accepted the wife's position in a divorce and we reversed for further findings. *See id.* at 542, 504 N.W.2d at 434.

While we agree with Joseph that the trial court did not provide a picture-perfect example of a statement of findings and conclusions of law, it was adequate. Also, the record shows a discussion of the court's reasoning. As important, the record was thorough enough to allow us to analyze Joseph's complaint about the trial court's handling of certain factors. We thus conclude that the record was sufficient to avoid our remanding the case for further findings.

*By the Court.*—Orders affirmed.