COURT OF APPEALS
DECISION
DATED AND FILED

August 16, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2021AP1729**

STATE OF WISCONSIN

Cir. Ct. No. 2019TP125

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO Z.Y., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

T.M.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1  DUGAN, J.[1]  Taylor appeals an order of the trial court terminating her parental rights to her son.[2]  On appeal, Taylor argues that the trial court erroneously admitted a psychological evaluation that she completed as part of the underlying child in need of protection or services (CHIPS) case that preceded these termination of parental rights (TPR) proceedings.  She further argues that she received ineffective assistance of counsel when trial counsel failed to object to an erroneous jury instruction that allowed the jury to consider the Division of Milwaukee Child Protective Services' (DMCPS) efforts to provide her services to complete the conditions to have her son safely returned to her after the date the TPR petition was filed.  Lastly, she argues that the evidence was insufficient to support the jury's verdict.

¶2  This court concludes that the psychological evaluation was properly admitted into evidence and that, although trial counsel performed deficiently by failing to object to the jury instruction given in this case, Taylor failed to show that she was prejudiced by the deficient performance.  This court further concludes that the evidence is sufficient to support the jury's verdict.  Accordingly, this court affirms the trial court's order.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Pursuant to WIS. STAT. RULE 809.107(6)(e), this court is required to issue a decision within thirty days after the filing of the reply brief.  This court may extend the deadline pursuant to WIS. STAT. RULE 809.82(2)(a) upon our own motion or for good cause.  *See* ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  On our own motion, this court now extends the decisional deadline through the date of this decision.

[2] To protect the confidentiality of these proceedings, this court uses a pseudonym to refer to the mother.

## BACKGROUND

¶3      The State filed a petition to terminate Taylor's parental rights to her son on July 18, 2019.[3]  In the petition, the State alleged that Taylor's son continued to be a child in need of protection or services and that Taylor failed to assume parental responsibility.  The petition cited that Taylor failed to control her mental health, had a history of domestic violence in her household, exhibited impulsive behavior and violent outbursts, and continued to deny any drug or alcohol abuse, as well as mental health needs.  The petition further cited Taylor's continuing homelessness and inability to provide stable housing to support the grounds alleged in the petition.

¶4      Taylor contested the petition, and the case proceeded to a jury trial on the grounds phase in March 2020.[4]  At the grounds phase, the jury heard testimony from Taylor's current case manager, two initial assessment specialists, the doctor who conducted a psychological evaluation of Taylor, a therapist who worked with Taylor, and Taylor.  With two dissenting jurors, the jury found that the State had proved the continuing CHIPS grounds.  The jury, however, did not find that the State had proved that Taylor failed to assume parental responsibility. The trial court subsequently found Taylor to be an unfit parent based on the jury's verdict, and the case proceeded to the disposition phase, following which the trial court entered an order terminating Taylor's parental rights.

---

[3] The petition also sought to terminate the rights of the father.  The father's rights are not at issue in this appeal.

[4] The Honorable Gwendolyn G. Connolly presided over the trial during the grounds phase in this case.  The Honorable Marshall B. Murray presided over the remainder of the proceedings and entered the order terminating Taylor's parental rights and the order denying Taylor's postdisposition motion.  For ease of reference, both will be referred to as the trial court.

¶5      Taylor filed a motion for postdisposition relief, and the trial court held a *Machner*[5] hearing.  Originally, the trial court reversed the order terminating Taylor's parental rights and granted Taylor a new trial on the grounds that she received ineffective assistance of counsel.  However, the trial court *sua sponte* reconsidered its original order and ultimately denied Taylor's motion for postdisposition relief.  Taylor now appeals.  Additional relevant facts will be provided as necessary.

## DISCUSSION

¶6      On appeal, Taylor argues that the trial court erroneously admitted the psychological evaluation that she completed as part of the CHIPS proceedings, that she received ineffective assistance of counsel when trial counsel failed to object to an error in the jury instructions that stated the jury should consider DMCPS's efforts to provide her services after the TPR petition was filed, and that the evidence was insufficient to support the jury's verdict.  Each argument is addressed in turn.

### I.      Admission of the Psychological Evaluation

¶7      As part of the underlying CHIPS proceedings, Taylor completed a psychological evaluation.  Prior to trial, Taylor filed a motion in limine seeking to exclude this examination from being admitted into evidence during the trial.  The trial court denied Taylor's motion and admitted the evaluation.  Taylor now argues that the trial court erroneously admitted the evaluation because it was privileged under WIS. STAT. § 905.04, and that none of the exceptions apply.

---

[5] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

4

¶8 A trial court's decision to admit or exclude the evaluation is reviewed for an erroneous exercise of discretion. *See* **State v. Hunt**, 2014 WI 102, ¶20, 360 Wis. 2d 576, 851 N.W.2d 434. However, this court reviews matters of statutory interpretation independently. **Estate of Miller v. Storey**, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759.

¶9 Here, this court concludes that, assuming that the evaluation was privileged, it meets the exception found in WIS. STAT. § 905.04(4)(b), as an examination that was completed by order of the court.[6] The CHIPS dispositional order provided conditions of return that Taylor was required to complete for the return of her son—in part it specifically stated, "Complete a psychological or psychiatric evaluation." Moreover, Taylor's argument that the CHIPS dispositional order simply orders Taylor to cooperate with any recommended evaluations, fails to consider the full language contained in the order—"[c]omplete a psychological or psychiatric evaluation." The evaluation was, therefore, properly admitted as evidence at the grounds trial.[7]

---

[6] WISCONSIN STAT. § 905.04(4)(b) states:

> If the judge orders an examination of the physical, mental or emotional condition of the patient, or evaluation of the patient for purposes of guardianship, protective services or protective placement, communications made and treatment records reviewed in the course thereof are not privileged under this section with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise.

[7] The State and the GAL identify additional exceptions that may apply to this case. However, having concluded that the exception found in WIS. STAT. § 905.04(4)(b) applies, this court does not address the additional exceptions identified. *See* **State v. Blalock**, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

¶10     Taylor argues that she had "an objectively reasonable expectation" that the evaluation was confidential and would not be shared. She cites to ***State v. Locke***, 177 Wis. 2d 590, 502 N.W.2d 891 (Ct. App. 1993), and ***State v. Joseph P.***, 200 Wis. 2d 227, 546 N.W.2d 494 (Ct. App. 1996), as support for her argument. However, this court is not persuaded that either of these cases applies here.

¶11     ***Locke*** involved the admission of testimony from a social worker that the defendant contacted on his own initiative—separate from any criminal proceedings. ***Id.***, 177 Wis. 2d at 599-600. ***Joseph P.*** involved an evaluation of an inmate completed as part of the Department of Corrections procedure to determine an inmate's treatment needs while he or she was "in the system." ***Id.***, 200 Wis. 2d at 232, 234-35. Importantly, neither case involved an evaluation that was completed to satisfy a court order and the evaluation was completed independent of any court proceedings. By contrast, in this case, Taylor's evaluation was completed as a condition of return contained in the CHIPS dispositional order in the CHIPS action that preceded this case. Thus, this court is not persuaded that either ***Locke*** or ***Joseph P.*** compels a conclusion here that Taylor had an objectively reasonable expectation that her evaluation would remain confidential.

¶12     Taylor further argues that this evaluation does not meet the exception found in WIS. STAT. § 905.04(4)(b) because it was not ordered by the court pursuant to WIS. STAT. § 48.295 specifically as part of these TPR proceedings. This court is again unpersuaded. While the court may not have ordered the evaluation pursuant to a court order under § 48.295, it was nonetheless ordered by the court as part of the CHIPS proceedings that led to these TPR proceedings, and Taylor's compliance with the conditions contained in the CHIPS dispositional order during the CHIPS proceedings was at issue in these TPR proceedings.

¶13  In short, the trial court appropriately exercised its discretion when it admitted the psychological evaluation that Taylor completed as one of the conditions of return contained in the CHIPS dispositional order.

## II.  Ineffective Assistance of Counsel

¶14  Taylor next argues that she received ineffective assistance of counsel when her trial counsel failed to object to an erroneous jury instruction and the jury's consideration of evidence regarding DMCPS's efforts to provide her services following the filing of the TPR petition.  As to this issue, this court agrees with Taylor that trial counsel was deficient in not objecting to the jury instruction on the continuing CHIPS ground, but this court concludes that she has not shown she was prejudiced by the deficient performance and, therefore, concludes that Taylor did not receive ineffective assistance of counsel.

¶15  To prove ineffective assistance of counsel, a parent must show two elements:  (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense.  *A.S. v. State*, 168 Wis. 2d 995, 1005, 485 N.W.2d 52 (1992) (adopting the *Strickland* analysis for TPR proceedings).  "An ineffective assistance of counsel claim presents a mixed question of fact and law."  *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95.  This court "will not reverse the circuit court's findings of fact unless they are clearly erroneous."  *Id.*  However, this court "independently review[s], as a matter of law, whether those facts demonstrate ineffective assistance of counsel."  *Id.*

¶16  During the grounds trial, the trial court instructed the jury as to the continuing CHIPS grounds that it may consider DMCPS's efforts to provide services to Taylor "since the filing of [the] petition on July 18, 2019."  However, it

also instructed the jury that in considering whether Taylor met the conditions of return, it "must consider the facts and circumstances as they existed on July 18, 2019, which is the date of which this petition was filed." Thus, the jury was instructed to consider the efforts made by DMCPS up to the date of the trial, but only consider Taylor's efforts to meet the conditions of return up to the date the TPR petition was filed, resulting in a difference of nearly eight months.

¶17 Taylor argues that the trial court misstated the law when it instructed the jury to consider DMCPS's efforts up to the date of the trial because, as discussed below, in this case DMCPS's efforts to provide services to Taylor after the TPR petition was filed were irrelevant. She then argues that trial counsel was deficient for failing to object to this error in the instruction.[8] She then argues that she was prejudiced because DMCPS made little to no effort to provide services to Taylor until after the TPR petition was filed in this case.

¶18 Turning to the first prong of the analysis, "[t]o establish that counsel's performance was deficient, the defendant must show that it fell below 'an objective standard of reasonableness.'" *State v. Breitzman*, 2017 WI 100, ¶38, 378 Wis. 2d 431, 904 N.W.2d 93 (citation omitted). Applying this standard, this court concludes that trial counsel's performance was deficient.

---

[8] This court notes that the jury unanimously found that Taylor failed to meet the court-ordered conditions for return of her son. Further, neither Taylor nor the State assert that the trial court erred in instructing the jury that whether Taylor failed to meet the conditions for the return of her son, it had "to consider the facts and circumstances as they existed on … the date on which this petition was filed." Thus, the only relevant evidence addressing whether Taylor failed to meet the conditions of return was what actions she undertook prior to the date the petition was filed.

¶19    As relevant here, to prove the grounds for continuing CHIPS, the State was required to show DMCPS "made a reasonable effort to provide the services ordered by the court."  WIS. STAT. § 48.415(2)(a)2.b.  The State was also required to show:

> That the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1. … ; that the parent has failed to meet the conditions established for the safe return of the child to the home; and, if the child has been placed outside the home for less than 15 of the most recent 22 months, that there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months ….

Sec. 48.415(2)(a)3.

¶20    Previously, WIS. STAT. § 48.415(2)(a)3. (2015-16), read:

> That the child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders … and that the parent has failed to meet the conditions established for the safe return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions with the 9-month period following the fact-finding hearing under s. 48.424.

Thus, under the previous version of the statute, at the grounds hearing, the fact finder was required to look to the future nine months from the date of the grounds hearing to determine whether the parent had a substantial likelihood of meeting the conditions established by the court for the safe return of the child.

> Regardless of how much time the child had spent outside of the parent's home, the factfinder would look forward nine months from the date of the hearing—even if years had passed without the parent satisfying the court-ordered conditions for the safe return of the child to the parental home.

9

*Eau Claire Cnty. DHS v. S.E.*, 2021 WI 56, ¶18, 397 Wis. 2d 462, 960 N.W.2d 391.

¶21    In April 2018, the legislature amended the language in the previous version of the statute to its current form as noted above. *See* 2017 Wis. Act 256, § 1.  Under the amended version, the legislature

> replaced the forward-looking nine-month period with a "15 of the most recent 22 months" timeframe.  Only if the child has been placed outside the home for *less* than 15 of the most recent 22 months may the factfinder consider whether there "is a substantial likelihood that the parent will not meet [the] conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months."  If the child has been placed outside the home for *more* that 15 of the most recent 22 months, the third subpart is satisfied by evidence proving that the parent failed to meet the conditions established for the safe return of the child.

*S.E.*, 397 Wis. 2d 462, ¶19.  Our supreme court then explained that "[t]hrough this statutory amendment, the legislature eliminated the petitioner's obligation to show a substantial likelihood that the parent will not meet the conditions of return within the nine months following the factfinding hearing if the child has been in out-of-home care for more than 15 months."  *Id.*  Thus, where the child has been placed outside the home for fifteen of the most recent twenty-two months, the fact finder would not be asked if there is a substantial likelihood that the parent will not meet the conditions by some future date.[9]

---

[9] In this case, Taylor's son had been placed outside of Taylor's home in June 2018 based on concerns about homelessness and marks on her son's arms indicative of potential abuse.  Thus, in this case, by the time of the grounds trial in March 2020, Taylor's son had been placed outside the home for more than fifteen of the most recent twenty-two months.  As such, there was no future element to the continuing CHIPS grounds in Taylor's case and, therefore, the jury was not asked if Taylor would be able to meet the conditions of return at any point in the future.

¶22    Next, this court addresses Taylor's argument that evidence of DMCPS's efforts to provide services to Taylor after the filing of the TPR petition are irrelevant and, therefore, improper for the jury to consider because there is no issue in this case of whether Taylor can meet the conditions of return by any point in the future.  The applicable standard jury instruction, WIS JI—CHILDREN 324, lists the "reasonable effort" element without a date component, simply stating that DMCPS "has made a reasonable effort to provide the services ordered by the court."  However, in brackets, the instruction includes the following as "[p]ossible additional language":  "In answering question 2, you may consider all evidence bearing on that question, including evidence of events and efforts occurring since the filing of the petition ….  Your answer must reflect your finding as of today's date."   The instruction then advises consulting *State v. Stacee P.*, Nos. 2012AP167-169 and 2012AP444-446, unpublished slip op. (WI App June 12, 2012), before adding the bracketed language.

¶23    The court in *Stacee P.* addressed Stacee P.'s argument that "the agency responsible for helping [Stacee] meet the court-ordered conditions for the return of her children had to make the 'reasonable effort' before the State filed the petition to terminate her parental rights, and what the agency did after that was not material to the agency's 'reasonable effort' obligation."  *Id.*, ¶5.  First, the court concluded that "the agency's duty to help the parent continues past the petition's filing date."  *Id.*, ¶6.  The court further stated that the statute "asks the jury to determine for two time periods a parent's compliance with the court-ordered conditions:  (1) the time before the petition's filing date, and (2) the nine-month period following the trial."  *Id.*, ¶8 (citing the previous version of WIS. STAT. § 48.415(2)(a)3.).   However, a full reading of *Stacee P.* indicates that this conclusion was compelled by the prior version of WIS. STAT. § 48.415(2), which

included a future looking element in which the jury was also required to consider whether a parent would meet the conditions of return within the nine months following the fact-finding hearing. *See Stacee P.*, Nos. 2012AP167-169 and 2012AP444-446, ¶¶7-8. With no future looking element in Taylor's case, the rationale of *Stacee P.* does not apply here.[10]

¶24 Moreover, we note that the Wisconsin courts that have addressed the issue of whether evidence of DMCPS's efforts to provide a parent with the services the court ordered after the TPR petition was filed, arose in situations where the jury was asked to decide if there was a substantial likelihood that a parent would not meet the conditions for the safe return of a child within a specified future period following the conclusion of the grounds trial. In *S.D.S. v. Rock Cnty. DSS*, 152 Wis. 2d 345, 359, 448 N.W.2d 282 (Ct. App. 1989), one of the issues that the court addressed was whether the department and the parents may introduce evidence concerning events which occurred after the TPR petitions were filed. In the grounds phase, the department had moved to exclude all evidence concerning events occurring after the termination petitions were filed and the trial court granted the motion, but on appeal, this court concluded that the trial court erred in granting the motion. *Id.* at 358-59.

¶25 The *S.D.S.* court explained that, at that time, the final element of WIS. STAT. § 48.415(2)(c), was "that there is a substantial likelihood that the parent will not meet these conditions [for safe return of the child] in the future." *Id.* at 359. It then stated, "To assess the likelihood that a parent will not meet

---

[10] Because the rationale of *Stacee P.* does not apply in this case, this court need not comment on the court's discussion of "two time periods" in the statute. *See State v. Stacee P.*, Nos. 2012AP167-169 and 2012AP444-446, unpublished slip op. ¶8 (WI App June 12, 2012).

certain conditions in the future may necessarily involve consideration of fresh facts occurring between the date the petition was filed and the hearing." *Id.* The court then concluded "that the trial court must admit evidence of post[-]filing events on *facts relevant to the 'substantial likelihood' element* in sec. 48.415(2)(c), Stats." *Id.* (emphasis added). It went on to say that "[t]he department, the parents, or the child's guardian ad litem may present evidence of such facts or events." *Id.* Thus, the court concluded that post-filing events are relevant to the issue of whether a parent will not meet certain conditions in the future.

¶26    As noted in this case, Taylor's son had been removed from his mother's home in June 2018. Thus, by the time of the grounds trial in March 2020, Taylor's son had been placed outside the home for more than fifteen of the most recent twenty-two months. Therefore, in this case, pursuant to the current statute there is no issue as to whether Taylor would be able to meet the conditions of return at any point in the future.

¶27    Thus, the issue in this case is whether evidence of DMCPS's efforts to provide services ordered by the court to Taylor, after the TPR petition was filed, is relevant and, therefore, admissible. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. "All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible." WIS. STAT. § 904.02.

¶28    As discussed above, as a result of the amendment to WIS. STAT. § 48.415(2)(a)3., the legislature eliminated the State's obligation to show a

substantial likelihood that Taylor will not meet the conditions for the safe return of her son by some future date. Thus, where as here, Taylor's son had been placed outside the home for fifteen of the most recent twenty-two months the jury would not be, and was not, asked if there is a substantial likelihood that Taylor will meet the conditions by some future date. *See S.E.*, 397 Wis. 2d 462, ¶19.

¶29 Further, as discussed above, evidence of DMCPS's efforts to provide services to Taylor post-filing of the TPR petition would be relevant to the "substantial likelihood" element of the statute, but that element does not apply in this case. Here, the State does not present any argument why the evidence of DMCPS's efforts to provide services to Taylor post-filing of the TPR petition is relevant without the "substantial likelihood" element. Thus, this court concludes that evidence of DMCPS's efforts to provide services to Taylor after the TPR petition was filed is not relevant and, therefore, was inadmissible. Therefore, this court concludes that the possible additional language in the jury instruction, instructing the jury to consider DMCPS's efforts after the trial date, was a misstatement of the law as it applied to Taylor's case, and improperly invited the jury to consider efforts made by DMCPS that did not apply to Taylor's case.[11]

¶30 Next, this court addresses whether trial counsel's performance was deficient for failing to object to the jury instruction and the admission of evidence about DMCPS's efforts after the TPR petition was filed. Trial counsel testified at

---

[11] This court observes that DMCPS does have an obligation to continue to provide services to parents in TPR cases until the resolution of the case, and the conclusion that the jury was not allowed to consider DMCPS's efforts past the date of the filing of the TPR petition in this case does not absolve DMCPS of this obligation. Any efforts made by DMCPS and the parent to meet the conditions of return after the filing of the TPR are still properly considered during the disposition.

the *Machner* hearing that she could not recall "any deliberate reason why I would have not raised that and I guess when I saw the issue raised in the post dispositional motion, … I missed that." She further testified that she was not aware of *Stacee P.* and did not remember seeing or reviewing the case prior to preparing the jury instructions here. Trial counsel also testified that the dates "seemed so incongruous" to "not be able to consider the parent's actions following the filing of the TPR but you were able to consider the agency's actions for a reasonable efforts finding." She further testified that she considered that whether DMCPS made reasonable efforts to provide services to Taylor as the "central issue" in the case. Therefore, considering trial counsel's recognition of reasonable efforts was the central issue in this case, the incongruity between the dates presented to the jury, and trial counsel testifying that she "missed" the issue here, this court concludes that trial counsel's performance was deficient.

¶31     This court next addresses Taylor's argument that she was prejudiced by trial counsel's failure to object to the jury instruction that allowed the jury to consider evidence of DMCPS's efforts following the date the TPR petition was filed. Taylor argues that, had her trial counsel objected, the jury would only have been able to consider DMCPS's efforts up to the date the petition was filed. She further argues that, as a result of the minimal efforts that DMCPS made prior to the filing of the petition, there is a reasonable probability that the jury would have found that those efforts were not reasonable. In support of her argument, Taylor states that she had two meetings with her case manager prior to the filing of the petition—one which Taylor initiated by going to her case manager's office seeking an update on her son's CHIPS case. She also states that her case manager never reviewed the conditions of return with her prior to the filing of the TPR petition, and the only service provided prior to the filing of the petition was a

referral for a psychological evaluation, which she began prior to the petition being filed. She further lists a variety of referrals made by her case manager after the petition was filed and contends that the fact that these referrals were not made until after the petition was filed, indicates that DMCPS failed to make a reasonable effort to provide her services. This court does not agree.[12]

¶32   "To establish that deficient performance was prejudicial, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" **Breitzman**, 378 Wis. 2d 431, ¶39 (citation omitted). This court concludes that there is no reasonable probability of a different outcome had the jury only considered DMCPS's efforts up to the date the TPR petition was filed and, therefore, Taylor was not prejudiced by trial counsel's failure to object.

¶33   In analyzing whether Taylor has shown that she was prejudiced by trial counsel's deficient performance, this court examines the evidence that was introduced during the trial that shows DMCPS's efforts to provide services to Taylor and the evidence that showed that Taylor refused to participate in services that DMCPS recommended she participate in, and her failure to cooperate with DMCPS. The jury heard testimony from several witnesses at the trial, including two initial assessment specialists from DMCPS, Taylor's current case manager, and Taylor. The initial assessment specialists testified regarding the events that

---

[12] As discussed further below, this court notes that Taylor's argument largely focuses on "referrals" and does not consider that DMCPS workers told Taylor about what she needed to work on and suggested that she become involved with a variety of services but she refused to participate in those services. Taylor fails to explain why DMCPS should have made referrals to programs or services that Taylor stated she would not participate in.

16

led to the removal of Taylor's son from her care in June 2018. According to their testimony, there were initial safety concerns related to domestic violence and a lack of resources to provide for Taylor's son. One initial assessment specialist testified that she spoke to Taylor and Taylor's mother[13] (the grandmother) the night that Taylor's son was removed and informed them about the concerns that she identified, and the second initial assessment specialist testified that she scheduled a family transfer meeting later in June 2018, where they also discussed why the case was initiated and what needed to happen moving forward. Additionally, at the family transfer meeting, Taylor was informed of the services she would have to complete to have her son returned to her care, and she was introduced to her first case manager who would be handling her case moving forward.

¶34     Taylor's current case manager also testified regarding DMCPS's efforts to provide services to Taylor since the time her son was removed from her care in June 2018. She testified that the first case manager reviewed DMCPS's concerns regarding Taylor's homelessness, domestic violence, and Taylor's mental health needs with Taylor at the family transfer meeting and developed a plan to address those concerns. DMPCS also did a Protective Capacity Family Assessment in July 2018 with Taylor. At that time, the first case manager offered specific services to Taylor focused on the main issues for her case—including domestic violence support groups and mental health treatment—but Taylor

---

[13] This court notes that on July 26, 2016, Taylor's mother petitioned the circuit court for guardianship of Taylor's son and the court granted the petition. She remained his guardian until the trial court dissolved the guardianship as a part of its order terminating Taylor's parental rights. Despite the guardianship, Taylor continued to intermittently provide care for her son in conjunction with her mother.

refused to participate in those services. Thus, this court concludes that, because Taylor refused to participate in those services, there was no basis for DMCPS to make any referrals for those services.

¶35    The current case manager further testified that Taylor's visitation with her son was suspended in October 2018, when Taylor continued to refuse the mental health treatment that was offered to her and would not address certain erratic and unpredictable behaviors that she exhibited in front of her son during her visits. According to the case notes, the first case manager informed Taylor at the time visitation was suspended that visitation would not be reinstated until Taylor addressed her mental health needs and engaged in treatment. When Taylor continued to press the issue of visitation, her current case manager continued to inform Taylor that visits would not be reinstated until she addressed her mental health needs.

¶36    Additionally, Taylor's current case manager testified that she met with Taylor in January 2019, following Taylor's release from the hospital when Taylor came to the case manager's office.[14] She explained that she referred Taylor for a psychological evaluation at that time because it was the only service Taylor would accept. However, she also tried to refer Taylor for an AODA assessment and domestic violence counseling, but Taylor "was not in agreement" and "not

---

[14] Taylor was hospitalized following a serious car accident from approximately October 2018 to January 2019. As the case manager testified, they were not in contact during Taylor's hospital stay because they were unsure of Taylor's whereabouts. In an effort to locate Taylor, the case manager reached out to Taylor's mother, who was also her son's legal guardian, but Taylor's mother told her that she did not know where Taylor was located and she did not have an updated phone number for her or any way to get in contact with Taylor. The case manager was further unable to locate Taylor using her last known address and phone number because, due to Taylor's homelessness, the last known address and phone number was no longer valid.

18

interested." She further testified that Taylor indicated at their January 2019 meeting, that she had a therapist and a medication provider that she became involved with through the Medical College of Wisconsin as a result of her hospital stay resulting from the automobile accident. The case manager also testified that Taylor signed medical releases, so her case manager would receive updates on her progress with those services. However, the case manager also stated that Taylor told her in February 2020 that she discontinued seeing her therapist and the medication provider—against the case manager's advice.

¶37 The case manager also testified that she did not initially refer Taylor to certain services, such as parenting classes, home management services, and domestic violence services. She explained that the original case manager referred Taylor to parenting classes at Family Preservation Services, but Taylor was discharged from those services, and therefore, did not complete the service. Further, she stated that Taylor no longer agreed to participate in parenting services until after the TPR petition was filed. However, when Taylor asked to participate in these services, the case manager testified that she did in fact make a referral in December 2019 to the Parenting Network. As for home management services, the case manager testified that she was originally unable to make referrals to such services because Taylor was homeless. Nevertheless, once Taylor had a stable home, the case manager referred Taylor to home management services in October 2019, and made a referral in January 2020 to RISE Youth and Family Services for home management. As to the domestic violence services, the case manager similarly testified that Taylor did not agree to participate in those services.

However, once Taylor agreed to those services, the case manager made a referral in February 2020 to Sojourner Family Peace Center.[15]

¶38  As to the timing of the referrals, the case manager explained that DMCPS often does not make referrals for services until a parent agrees to participate.  Thus, she explained that, even though DMCPS offered certain services to Taylor, no referrals were made until Taylor agreed to participate in services, and once Taylor agreed to participate, the case manager made several referrals to different services for Taylor, which happened to be after the TPR was filed.[16]

¶39  The case manager additionally testified that she did review the conditions of return in the CHIPS dispositional order with Taylor in full in August 2019, which admittedly is after the date the TPR petition was filed.  However, the case manager also testified that Taylor had her own copy of the conditions, that Taylor never asked questions about the conditions, and that they also reviewed the conditions, at least in part, a month or two following the January 2019 meeting.

---

[15] This court notes that the case manager also testified that Taylor had yet to follow through with the case manager's referrals as of the date of the trial.  This further shows that Taylor was unwilling to participate in services DMCPS offered to provide to her and her unwillingness to cooperate.

[16] This court notes the referrals for services that DMCPS made for Taylor after the TPR petition was filed not because they are evidence that DMCPS made a reasonable effort to provide services to Taylor prior to the filing of the petition, but rather, to show the fallacy of Taylor's argument that the fact that DMCPS did not make "referrals" until after the petition was filed indicates that DMCPS failed to make a timely reasonable effort to provide Taylor with services.  What it shows is that, consistent with the case manager's testimony, DMCPS offered to provide services to Taylor, but she refused to participate in those services and thus no referrals were made.  However, when Taylor agreed to participate in a service, DMCPS made the referral.

¶40    Following the testimony from DMCPS workers, Taylor then testified, and she explained that it was not clear to her that she was required to do any therapy.  She also testified that her case managers provided her with bus tickets to use for transportation to visits with her son and other services, but she would use the bus tickets on other things.  She also testified that she understood that she needed to address her mental health in order to reinstate visitation with her son.

¶41    This court concludes that overall the testimony introduced at trial demonstrates that DMCPS's efforts to provide Taylor with services were not minimal, as Taylor asserts.  Further, the testimony introduced at trial shows that DMCPS was clear with Taylor from the beginning regarding its concerns that led to the removal of her son and what Taylor needed to address to have her son returned to her care.  DMCPS also made a reasonable effort to provide Taylor services, but Taylor refused to participate in many of those services until after the TPR petition was filed, which resulted in referrals that could only occur, and did occur, after the petition was filed.

¶42    Moreover, Taylor's argument that DMCPS failed to make a reasonable effort fails to consider the entirety of DMCPS's efforts from the beginning of its involvement until the time the TPR petition was filed and fails to consider Taylor's lack of cooperation with DMCPS and her rejection of services offered.  This court concludes that there is ample testimony describing that DMCPS informed Taylor of what she needed to do to have her son returned to her care, that it tried to provide services to Taylor, and despite DMCPS's encouragement, few referrals for services were made prior to the filing of the TPR because of Taylor's lack of cooperation and refusal to participate in the services.  Thus, considering the totality of the testimony, this court concludes that there is

sufficient evidence that DMCPS's efforts prior to the filing of the TPR petition were reasonable, and there is no reasonable probability of a different result if the jury only heard testimony of DMCPS's efforts prior to the filing of the petition after reviewing the testimony as a whole. *See **La Crosse Cnty. DHS v. Tara P.***, 2002 WI App 84, ¶14 n.4, 252 Wis. 2d 179, 643 N.W.2d 194 ("[E]vents predating dispositional orders may also be relevant[.]").

¶43     Consequently, this court concludes that Taylor was not prejudiced by trial counsel's failure to object to the jury instruction that allowed the jury to consider evidence of DMCPS's efforts to provide Taylor services after the TPR petition in this case was filed. As such, this court concludes that Taylor did not receive ineffective assistance of counsel.

### III.     Sufficiency of the Evidence

¶44     Taylor also argues that the evidence introduced at trial was insufficient to show that DMCPS made a reasonable effort to provide services to her. She describes that she was the one who went to her case manager's office in January 2019,[17] two months after the CHIPS dispositional order was entered, and asked for an update on the underlying CHIPS case. She further describes that her case manager did not review the conditions of return at that time, and her case

---

[17] This court notes that in making this assertion, Taylor chooses to ignore the testimony of the case manager who testified that she reached out to Taylor's mother in an attempt to locate and contact Taylor. Clearly, reaching out to Taylor's mother who was also the legal guardian of Taylor's son, was a reasonable effort to attempt to locate and contact Taylor, who would have been in a better position to know where Taylor was and how to locate her. However, Taylor's mother told the case manager that she did not know where Taylor was and she did not have an updated phone number for Taylor. Taylor does not offer any reason why she could not have contacted DMCPS or her mother earlier and share with them where she was and how to contact her.

manager made no effort to provide any services to her, other than a referral for the psychological evaluation, until after the TPR petition was filed in this case. This court disagrees.

¶45 This court reviews the sufficiency of the evidence "considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made," and the verdict will only be overturned if "there is no credible evidence to sustain a finding in favor of such party." *See* WIS. STAT. § 805.14(1).

¶46 Considering all the credible evidence and reasonable inferences therefrom, this court concludes that there was sufficient credible evidence to support a finding that DMCPS made a reasonable effort to provide the court-ordered services to Taylor. The testimony outlined above from the initial assessment workers, the case manager, and Taylor is more than sufficient to sustain such a finding. Thus, this court rejects Taylor's argument that the evidence was insufficient to support the jury's finding in this case that DMCPS made a reasonable effort to provide the court-ordered services to her, and this court will not disturb the trial court's finding that Taylor is an unfit parent.

**CONCLUSION**

¶47 This court concludes the trial court's decision to admit Taylor's psychological evaluation at the grounds trial was not an erroneous exercise of discretion. This court also concludes that even though trial counsel was deficient in failing to object to the jury instruction that the trial court gave to the jury, Taylor failed to show that she was prejudiced by trial counsel's deficient performance because even if the jury had only considered DMCPS's efforts up to the date the TPR petition was filed, the evidence was sufficient for the jury to find

that DMCPS made a reasonable effort to provide Taylor with the services order by the court and there is no reasonable probability of a different outcome. Therefore, Taylor did not receive ineffective assistance of counsel. Thus, this court affirms the trial court's order terminating Taylor's parental rights.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.